Kenneth W. MOSS and Michelle Moss, Appellants,

v.

WASTE MANAGEMENT OF TEXAS, INC., Appellee.

No. 01–07–01106–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 20, 2009.

Rehearing Overruled Oct. 13, 2009.

Anthony L. Bannwart, Bannwart & Associates, P.C., Houston, TX, for Appellants.

Clifford L. Harrison, Harrison, Bettis, Staff, McFarland & Weems, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HANKS, and BLAND.

## OPINION

JANE BLAND, Justice.

This appeal arises from a jury's verdict in favor of a property owner, sued for its negligence after a truck-pedestrian accident occurred on its premises. A Rustin Transportation Company (Rustin) employee, driving a company eighteen-wheeled truck, struck and injured Kenneth Moss, a fellow employee, while Moss directed Rustin trucks at a waste transfer facility owned by Waste Management of Texas, Inc. (Waste Management). Moss sued Waste Management, the premises owner,

for negligence.[1] A jury found that Waste Management did not control Rustin's activities. Based on the jury's finding, the trial court ordered that Moss take nothing in his suit against Waste Management. Moss appeals the jury verdict and judgment, contending that (1) the trial court erred in predicating the liability and damages issues on whether Waste Management exercised control over Rustin's activities, and (2) the jury's right-to-control finding is against the great weight and preponderance of the evidence. We conclude that the trial court did not err in submitting the right-to-control issue and that factually sufficient evidence supports the jury's verdict. We therefore affirm.

## Background

*Facts giving rise to Moss's suit*

Waste Management works with other private and municipal waste disposal operations to collect garbage. In connection with these activities, Waste Management owns transfer stations—in this case, the Koenig Street station—where waste disposal truck drivers dump their loads. These strategically placed transfer stations minimize the number of long trips to outlying landfills and allow the trucks to quickly return to their routes.

As the facility collects waste, operators weigh, sort, and compact it, then load it onto trucks and deliver it to landfills. One such operator, Rustin, contracts with Waste Management to load and haul processed garbage from the Koenig Street station to landfills outside Houston.

Under the Loading and Transportation Service Agreement between Waste Management and Rustin (the contract), Rustin agreed to serve as Waste Management's

preferred transporter for its loading and shipment requirements at certain locations, including the Koenig Street facility. Rustin agreed to provide personnel, tractor-trailer units, and equipment sufficient to load and transport up to 2,500 tons of waste delivered daily to the facilities and to render its services in a legal and safe manner. The contract declares that Rustin is responsible for "initiating, maintaining, and supervising all health and safety precautions, requirements and programs for its employees, subcontractors, vendors and other persons in connection with the [s]ervices." Waste Management retained the right to "inspect, review, and monitor" Rustin's performance under the agreement to ensure satisfactory compliance.

As an employee of Rustin, Moss worked at the Koenig Street station as a "spotter," directing trucks into the bays as they entered the station and conducting periodic inspections to ensure that the garbage dumped at the station did not contain hazardous waste. In late February 2004, one of Rustin's drivers struck Moss while backing his truck into the transfer station, causing Moss serious injuries.

*Proceedings in the trial court*

Moss sued Waste Management, asserting that it breached its duty of care to Moss by failing to

- provide adequate warning to employees of contractors working at its facility;

- adequately supervise activities on its premises;

- adequately control or limit the volume of garbage and traffic entering the facility; and

---

1. Moss's daughter, Michelle Moss, is also a party. For ease of reference, and because her loss of consortium claim derives wholly from Moss's negligence claims, we refer to Moss in the singular. *See Reagan v. Vaughn*, 804 S.W.2d 463, 466 (Tex.1990).

- design the facility so that it could safely accommodate the volume of garbage and traffic it handles.

The parties tried the case before a jury. The jury heard disputed evidence concerning the extent to which Waste Management exercised authority over the transfer station, but none that Waste Management deviated in any material way from the oversight activities described in the contract. Both Waste Management and Rustin managers consistently testified that Rustin alone was responsible for controlling traffic at the transfer station, training its drivers and spotters, and hauling trash to the landfills.

At the close of evidence, the trial court prepared the jury charge with the parties' participation. Over Moss's objection, the court's first question to the jury inquired whether Waste Management had or exercised any right of control over Rustin's activities.[2] The question read:

**Question No. 1:**

Did Waste Management of Texas, Inc., exercise or retain some control over the manner in which Rustin Transportation performed its duties and responsibilities at the WRS Transfer Station, other than the right to order the work to start or stop or to inspect progress or receive reports?

Answer "Yes" or "No":

The jury answered "no." Because the trial court predicated the remaining questions on an affirmative response to Question No. 1, the jury did not answer any questions about liability or damages. The trial court then rendered judgment that Moss take nothing in his suit against Waste Management.

2. The trial court used the applicable pattern jury charge to draft the question. *See* COMMITTEE ON PATTERN JURY CHARGES OF THE STATE BAR OF

**Discussion**

*Jury Charge*

Moss first contends that the trial court erred in submitting a question to the jury predicating liability and damages upon Waste Management's right to control the manner in which Rustin performed its duties and responsibilities. Specifically, Moss contends that the trial court erred in submitting Question No. 1 because he brought a direct negligence action against Waste Management based on Waste Management's operation and management of the Koenig Street waste transfer station, not a premises liability claim against Waste Management.

*Error preservation*

As a preliminary matter, we address Waste Management's claim that Rustin waived this issue by merely objecting to the submission of the question as "inappropriate" without also tendering a substantially correct question. Texas Rule of Civil Procedure 274 provides that "[a] party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection." TEX.R. CIV. P. 274. Whether a party must do more than object to preserve an issue for appeal, however, depends on the nature of the objection. When a party, like Moss, contends that another party's proposed question be omitted entirely, that party is not required to tender a substantially correct definition or question. *See Turner v. Precision Surgical, L.L.C.,* 274 S.W.3d 245, 248 n. 2 (Tex.App.-Houston [1st Dist.] 2008, no pet.). Moss's objection preserved his contention for appellate review.

TEXAS, TEXAS PATTERN JURY CHARGES–MALPRACTICE, PREMISES & PRODUCTS § 66.33 (2004 ed.).

*Standard of review for jury charge issues*

We review the trial court's submission of instructions and jury questions for an abuse of discretion. *European Crossroads' Shopping Ctr., Ltd. v. Criswell*, 910 S.W.2d 45, 54 (Tex.App.-Dallas 1995, writ denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). A trial court has wide discretion in submitting instructions and jury questions. *Howell Crude Oil Co. v. Donna Ref. Partners, Ltd.*, 928 S.W.2d 100, 110 (Tex.App.-Houston [14th Dist.] 1996, writ denied).

*Right to control*

Moss asserts that the trial court erred in submitting Question No. 1 to the jury because his cause of action against Waste Management is one for direct negligence, not premises liability. Under a premises liability theory, the occupier of land has a duty to use reasonable care to keep the premises under its control in a safe condition, and may be subject to liability for negligence in situations arising from a premises defect as well as those arising from an activity or instrumentality. *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex.2002); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985); *see also Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 697 n. 11 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (explaining that premises liability category is for those defects that existed on premises when independent contractor entered on property or that were created through some means unrelated to independent contractor's activity).

Absent a duty, however, Waste Management cannot be held liable for Moss's injuries as a matter of law. *See Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex.2006) (citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987)). The pertinent issue, then, is whether Waste Management owed Moss a duty to use reasonable care in preventing the type of accident that resulted in Moss's injuries.

Premises owners like Waste Management have no duty to see that independent contractors like Rustin use reasonable care in performing their work unless they exercise control over the independent contractor's activity. *Clayton W. Williams, Jr. v. Olivo*, 952 S.W.2d 523, 527–28 (Tex.1997); *Redinger*, 689 S.W.2d at 418. A plaintiff seeking to prove that the property owner is liable for a negligent act therefore must prove that (1) the owner had a contractual right of control or exercised actual control, in a way that extends to the operative detail of the contractor's work, and (2) a nexus exists between the owner's retained control and the activity that caused the plaintiff's injury. *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214 (Tex.2008); *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex.App.-Houston [14th Dist.] 2007, pet. denied).

Moss contends that, as the owner and operator of the Koenig Street station, Waste Management's "right to control its own premises is implicit," which makes the jury question on right to control improper. Moss relies on our decision in *Lewis v. UPS, Inc.*, in which Lewis, an independent contractor hired to repair UPS's equipment, brought a negligence action for injuries resulting from activities conducted by UPS employees while he was on UPS's premises making the repair. 175 S.W.3d 811, 814 (Tex.App.-Houston [1st Dist.] 2004, pet. denied). Lewis alleged as the negligent acts causing his injury that (1) a UPS employee started a conveyor without any warning, and (2) UPS's warning buzz-

er did not work properly. *Id.* We held that, because these acts were attributable to UPS and not an independent contractor, UPS's right to control the injury-causing activity was implicit. *Id.* Consequently, we held that the trial court did not abuse its discretion in refusing to predicate the negligence issue on a right-to-control question. *Id.* In contrast, here, Moss did not allege or produce evidence that a Waste Management employee's acts directly caused this accident—a Rustin employee drove the truck and another flagged it into the bay.

The facts thus resemble those in the Texas Supreme Court's decision in *Dow Chemical,* in which the plaintiff, a carpenter employed by Gulf States, an independent contractor retained by Dow, suffered injuries when an overhead pipe, which another Gulf States employee had improperly installed, became unstable and fell on him, trapping his arm and causing his injury. 89 S.W.3d at 605. The plaintiff sued Dow, alleging it was negligent for failing to withhold a safe work permit for the area until the pipe was properly installed, or, alternatively, for failing to implement a safety rule detailing how the ends of pipes should be secured before allowing workers in an area.

Dow required Gulf States, like its other independent contractors, to comply with Dow's safety rules and regulations. The agreement between Dow and Gulf States, however, did not grant Dow any right either to control the means, methods, or details of Gulf States' work, or to direct the order in which Gulf States' work should be done.

 Under those circumstances, the Supreme Court held, a duty of control is not implicit, and the plaintiff bears the burden to prove right of control as a predicate to liability. *See id.* at 606–08; *see also Olivo,* 952 S.W.2d at 529 (confirming that simple negligence question, unaccompanied by right-to-control issue, cannot support recovery under premises liability theory). Similarly here, a fellow Rustin employee struck Moss with his truck, and Moss's claims against Waste Management were claims of a failure to warn or supervise. Given these facts, we hold that the trial court did not err in concluding that a right to control is an element of the simple negligence claim asserted against Waste Management.

*Propriety of submitting right-to-control question*

Because Waste Management's right to control is an essential element of Moss's negligence claim, the trial court's submission of Question No. 1 to the jury is improper only if the evidence conclusively shows that Waste Management exercised or retained a right to control the acts that led to Moss's injury. *See Brown v. Bank of Galveston,* 963 S.W.2d 511, 515 (Tex. 1998); *see also City of Keller v. Wilson,* 168 S.W.3d 802, 814–15 (Tex.2005). Moss first contends that the contract between Waste Management and Rustin evidences that Waste Management retained a right to control. The *Dow Chemical* court observed that either a contract or a premises owner's actual conduct may give rise to a right to control, and corresponding duty of care. 89 S.W.3d at 606–07. To support his contention, Moss points to provisions under which Waste Management retained a right of access to the transfer station, as well as the right to inspect, review, and monitor Rustin's performance under the contract. Those provisions, however, do not indicate that Waste Management retained control over the details of Rustin's work, such as how or where Rustin loaded its trucks. On the contrary, the contract expressly places with Rustin the sole responsibility for the care, custody, and con-

trol of the waste deposited at the facility until it reaches its destination landfill, and specifies that, according to the parties' understanding, neither Rustin Transportation nor its employees were agents or employees of Waste Management, "but an independent contract carrier." Read as a whole, the contract does not conclusively prove that Waste Management retained any right to control the means, methods, or details of Rustin's work, such that the trial court was required to direct a verdict in favor of Moss on the issue.

Nor do the circumstances that resulted in Moss's injury conclusively prove that Waste Management retained an actual right to control the details of Rustin's work in (1) driving or directing its trucks into the bays, (2) conducting random inspections to prevent dumping of unauthorized waste at the transfer station, or (3) choosing which of the transfer station's loading bays to use in the course of handling the volume of trash specified under the contract. Rather, witnesses at trial, including managers from both companies and Moss himself, testified that Rustin employees handled those matters. Because the contract and the actual circumstances do not conclusively prove that Waste Management retained control over the details of Rustin's work, the right to control remained a fact issue for the jury to decide. Accordingly, under the facts alleged by Moss and proved at trial, we hold that the trial court did not abuse its discretion in submitting Question No. 1 to the jury, and in predicating the remaining questions on the jury's affirmative answer to that question.

■■■ Separate from a duty arising from its negligent activity, an owner or occupier has a duty to inspect the premises for defects pre-existing the independent contractor's entry and to warn the independent contractor of concealed hazards about which the owner knows or should have known. *Shell Oil Co. v. Khan,* 138 S.W.3d 288, 295 (Tex.2004). While Moss alleged in his petition that the defective design of the premises caused his injuries and that Waste Management did not warn him of those defects, at trial he did not produce any evidence of any concealed hazard causing Moss's injury of which Waste Management should have, but failed to, warn, independent of Waste Management's failure to properly control Rustin's activities on its premises. The negligence issue, as framed for the jury, was one of negligent acts or failures to act, not of a non-obvious premises defect or hazard. We thus hold that the trial court did not err in predicating the question of Waste Management's liability to Moss on its right to control Rustin's work because the jury heard no evidence of a concealed hazard on the premises, independent from allegations that Waste Management failed to properly supervise or control Rustin's activities at the Koenig Street station.

### Factual Sufficiency

■■■ As an alternative ground for appellate relief, Moss contends that the jury's finding that Waste Management did not exercise or retain some control over the manner in which Rustin performed its duties and responsibilities was against the great weight and preponderance of the evidence and was manifestly unjust.

#### Standard of Review

■■■ In reviewing a factual sufficiency point, we consider all the evidence supporting and contradicting the finding. *Plus-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.,* 190 S.W.3d 108, 111 (Tex.App.-Houston [1st Dist.] 2005, no pet.). We set aside the verdict only if the finding is so contrary to

the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Courts of appeals should detail the evidence relevant to the issue and state why the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). Further, courts of appeal should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. *Id.*

Moss first directs our attention to the testimony of Charles Rivett, who was Waste Management's senior district manager for disposal operations at the time of Moss's injury, specifically, Rivett's testimony that he oversaw activities at three transfer stations. In his testimony, Rivett denied having any oversight authority over Rustin's day-to-day operations. Rather, he explained, his duties consisted of ensuring that Rustin conducted regular training programs and asking whether Rustin had any particular concerns concerning operations as they pertained to Waste Management. Rivett stated that Waste Management relied on Rustin to provide its own safety and operate within applicable rules, and expected Rustin to notify him if it believed that Waste Management should correct an unsafe condition or situation.

Moss asserts that the testimony of Rivett and Douglas Travis, Rustin's safety director at the Koenig Street transfer station, also proves that Waste Management retained exclusive control over (1) volume of trash dumped at and removed from the premises, (2) the design of the premises, (3) entry to and exit from the facility, (4) authorization of persons and entities to dump at the premises, (5) hours of operation, (6) flow of traffic into facility, (7) financial arrangements for dumping, (8) overall safety and supervision of premises, and (9) selection of Rustin personnel to be used at the premises.

According to Travis, trucks entering the transfer station first rolled onto the scale, and Waste Management handled "the billing side of that," but that, "once they come off the scale, they become [Rustin's] responsibility." Rustin then directed the trucks' movement and unloading, loading of tractor trailers, and unloading at the landfill. Travis also explained that Waste Management periodically brought in safety and compliance personnel to perform site inspections to ensure that Rustin complied with the state permit requirements and was prepared for the possibility of a random audit by the Texas Commission on Environmental Quality (TCEQ). A requirement that Rustin comply with governmental regulations and safety rules, however, is not conclusive evidence that Waste Management retained some control over Rustin's work. *See Dow Chem. Co.,* 89 S.W.3d at 611 (citing *Hoechst–Celanese Corp. v. Mendez,* 967 S.W.2d 354, 357–58 (Tex.1998)).

Moss himself admitted that Rustin was in control of the facility: "They are in control of all the trash that comes in. They are in control of all operations on the facility itself. It was my understanding." The evidence, viewed as a whole, does not show that Waste Management exercised control over the operative details of Rustin's work—specifically over the direction and control of traffic within the transfer station—to the extent that they jury's finding is against the great weight and preponderance of the evidence and is manifestly unjust. Accordingly, we hold that factually sufficient evidence supports the jury's verdict.

**Conclusion**

We hold that the trial court did not abuse its discretion in submitting a right-

to-control question to the jury as a predicate to liability, and that factually sufficient evidence supports the jury's finding that Waste Management did not control the activities of the trucking company employees that caused this accident. We therefore affirm the judgment of the trial court.

Justice JENNINGS, dissenting.

TERRY JENNINGS, Justice, dissenting.

The majority errs in concluding that the "right to control is an essential element" of the negligence and premises liability claims brought by appellant, Kenneth W. Moss, against appellee, Waste Management of Texas, Inc. ("Waste Management"). Moss's claims are not based upon the vicarious liability of Waste Management for the acts or omissions of its independent contractor and Moss's employer, Rustin Transportation Co. ("Rustin"). Rather, the gist of Moss's claims is that Waste Management was itself directly negligent in its operation and management of its facility where Moss was injured and that Waste Management created the dangerous situation in which Moss was injured. Thus, the trial court erred in submitting a question predicating Waste Management's liability on its right to control Rustin's work. Accordingly, I respectfully dissent.

### Background Facts

Waste Management entered into a "Loading and Transportation Service Agreement" with Rustin, which is in the business of providing solid waste loading and transportation services, to retrieve waste from various Waste Management transfer stations, load it onto Rustin vehicles, and then transport it to various municipal landfills. Pursuant to the contract, Rustin could "not refuse" any waste shipments tendered by Waste Management.

Moss was seriously injured when a Rustin eighteen-wheel tractor-trailer, which had arrived to retrieve waste at Waste Management's WRS Transfer Station, backed over him. In his Second Amended Petition, Moss alleged,

> The WRS Transfer Station was designed and built by Defendant Waste Management with six (6) dumping bays and one (1) loading bay and *was not* designed to facilitate multiple loading areas. On February 26, 2004, Defendant Waste Management directed more garbage into the WRS Transfer Station than it was reasonably designed to accommodate with its one loading bay. Rustin Transportation, unable and unauthorized to refuse such additional garbage, was forced to utilize a bay that is designed exclusively for dumping in order to accommodate the excessive waste. It was during this use of a dumping bay for purposes of loading a Rustin ... tractor-trailer that ... Moss was severely injured.

Moss was a "spotter," whose duties included performing random inspections of conventional garbage trucks arriving at the transfer station to unload their waste. Moss would have to leave his spotter position and enter a dumping area to check for unauthorized waste. Moss further alleged,

> Due to the high volume of waste being allowed into the facility by Defendant Waste Management on February 26, 2004, and the facility's inadequate design, loading hauling trucks were being directed to load from dumping bay number six (6). It was during the course of such an inspection that ... [Moss] was struck and run over by [a Rustin] eighteen-wheeled tractor-trailer ... [which] was backing into a dumping bay rather than the usual loading area. Defendant

Waste Management had the sole control over the volume of waste allowed into the WRS Transfer Station.

Among other things, Moss alleged that Waste Management failed to use ordinary care to provide reasonably safe and adequate controlled truck access to its facility, to provide adequate signage and warning directed to the drivers of trucks entering its facility and/or to employees of contractors working at its facility, and to adequately control and/or limit the volume of garbage and traffic entering its premises. Moss also alleged that Waste Management knew or should have known that the design of the facility created an unreasonably dangerous or defective condition on its premises.

### "Right to Control"

Waste Management and the majority have recast Moss's lawsuit as one against Waste Management for the negligent activity of Rustin. In regard to the liability of premises owners and general contractors for the negligent activities of independent contractors, Texas has long recognized the rule that

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985) (quoting RESTATEMENT (SECOND) OF TORTS § 414 (1977)). However, this rule is not applicable here because Moss is not claiming that he was injured by either the negligent activity of Rustin or by a premises defect created by Rustin's work. *See Dow Chem. Co. v. Bright,* 89 S.W.3d 602, 606 (Tex.2002). Rather, from his petition as quoted above, it is quite clear that Moss is not pursuing a claim against Waste Management based on any negligent activity of Rustin or any premises defect created by Rustin.

Moss is claiming, quite simply and clearly, that Waste Management, which was contractually in complete control of the volume of garbage entering and leaving its facility, overloaded its facility with an excessive amount of garbage and the associated excessive amount of truck traffic. He asserts that he was injured when a Rustin eighteen-wheel tractor-trailer, *through no fault of Rustin,* was "forced" to load waste at a bay designed "exclusively for dumping." Contrary to Waste Management's and the majority's characterization of Moss's lawsuit, Moss asserts that he was injured by the negligence of Waste Management, not Rustin, and a premises defect created by Waste Management, not Rustin.

In support of its characterization of Moss's claims and its holding that "the trial court did not err in concluding that a right to control is an element of the simple negligence claim asserted against Waste Management," the majority relies on *Dow Chemical Co. v. Bright,* 89 S.W.3d 602 (Tex.2002). In *Dow Chemical,* Bright, an employee of an independent contractor, was injured when a pipe which had been improperly secured by another employee of the independent contractor, became unstable and fell on him at a construction site owned by Dow. *Id.* at 605. Bright sued Dow, specifically alleging that Dow had retained both contractual and actual control of the independent contractor's work on Dow's premises when he was injured. *Id.* Bright specifically argued that Dow was subject to liability because the independent contractor had created a premises defect "by its work activity," i.e., a "dangerous condition" arose "because of the independent contractor's work activity."

*Id.* at 606. The Texas Supreme Court concluded that no fact issues existed about the extent of contractual or actual control retained by Dow. *Id.* at 605.

Here, in stark contrast, Moss is not claiming that a premises defect was in any way created by Rustin's activities. Rather, as clearly stated in his pleadings, Moss is alleging that Waste Management, which controlled the volume of garbage entering and leaving its facility, created the dangerous situation in which Moss was injured by overloading the transfer station with an excessive volume of garbage and forcing Rustin to use a bay designed "exclusively for dumping" to load garbage onto an eighteen-wheel tractor-trailer. He emphasizes that Waste Management's transfer station "*was not* designed to facilitate multiple loading areas" that it required Rustin to use in order to retrieve the excessive shipments of garbage, which Rustin, pursuant to the contract, could "not refuse."

Thus, the issue of whether Waste Management retained a "right to control" the work of Rustin at the transfer station is not relevant to Moss's claims against Waste Management for its own negligence and its own creation of a dangerous condition on its premises.[1]

## Conclusion

I would hold that the trial court erred in submitting the question to the jury predicating Waste Management's liability to Moss on its right to control Rustin's work. Because it is fundamental to our system of justice that parties have the right to be judged by a jury properly instructed in the law and the trial court's error probably caused the rendition of a harmful judgment, I would remand the case to the trial court for a new trial. *See* TEX.R.APP. P. 44.1(a)(1); *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 388 (Tex.2000). The majority's holding and judgment to the contrary is in error. Accordingly, I respectfully dissent.

1. Although question number one of the charge asked the jury to find whether Waste Management exercised or retained some control over the manner in which Rustin performed its duties and responsibilities at the transfer station, question number two made no reference to Rustin and simply asked the jury to find whether the negligence of Waste Management caused the occurrence in question. Question two further stated,

With respect to the condition of the premises, [Waste Management] was negligent if—

a. the condition posed an unreasonable risk of harm, and

b. [Waste Management] should have known of the danger, and

c. [Waste Management] failed to exercise ordinary care to protect [Moss] from the danger, by both failing to adequately warn [Moss] of the condition and failing to make that condition reasonably safe.