Opinion issued March 17, 2011



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO.
01-09-00276-CV

———————————

St. Paul
Mercury Insurance Company, Joe Turner, and Alliance Construction, Inc.,
Appellants

V.

Stewart Builders, ltd. d/b/a/ Keystone Sitework and
d/b/a Keystone Concrete, Appellee



 



 

On
Appeal from the 151st District Court

Harris
County, Texas



Trial Court Case No.
2003-53202

 



 

 

          MEMORANDUM
OPINION

 

          This appeal arises from a
jury verdict in favor of a subcontractor in its   construction contract claims against the general
contractor.  The general contractor,
Alliance Construction, Inc., and its CEO, Joe Turner,[1]
appeal a judgment in favor of the subcontractor, Stewart Builders, Ltd.  After a jury trial, the trial court rendered
judgment for $737,315 for the unpaid portion of Stewart’s bills, $498,142.13 in
statutory 18% post-judgment interest, pre-judgment interest, $350,000 in attorneys’
fees for trial, contingent attorneys’ fees for appeal, and costs.  

Turner and Alliance
bring 16 issues attacking four aspects of the trial court’s judgment: the
sufficiency of the evidence to support a claim that Turner misapplied funds
paid by the owner and held in trust for Stewart’s benefit under the Texas
Property Code; the submission of questions concerning, and the sufficiency of
the evidence to support, Stewart’s claim that Alliance breached the
construction contracts by withholding final payment; the submission of
questions concerning, and the sufficiency of the evidence to support, Stewart’s
claim that it substantially performed its contract obligations; and the award
of interest and attorneys’ fees.  We
conclude that the evidence is insufficient to support the claim for
misapplication of trust funds, but sufficient to support the breach of contract
claim.  Because of our resolution of
these issues, we do not reach the issues concerning substantial
performance.  We also conclude that the
evidence is insufficient to support the award of 18% statutory post-judgment
interest against Turner.  Finally, we
conclude the issue of attorneys’ fees should be remanded.  We affirm in part, reverse and render in
part, and remand for further proceedings not inconsistent with this opinion.          

Background

          Alliance
is a commercial construction company that has built a number of different types
of buildings and facilities.  Alliance was
hired by G.E. Packaged Power, L.P. (“GE”) to design and build its Jacintoport
Facility Expansions, including parking lots. 
Alliance as the general contractor entered into two separate contracts
with Stewart as a subcontractor on September 12, 2002.   Stewart is a construction company that,
among other things, performs concrete work and site work, such as constructing
parking lots.  In the first contract,
which the parties call the Concrete Subcontract, Alliance contracted with
Stewart to complete all concrete work for the project.  Stewart completed this work in October 2002,
without any problems or complaints.

In the second
contract, Alliance hired Stewart to complete site work, including the
construction of two parking lots.  The Site
Work Subcontract was signed on behalf of Alliance by Turner in his capacity as
CEO of Alliance.  This contract is the
focus of the parties’ dispute. 

          Alliance’s
contract with GE included an incentive clause for early completion of the
construction project.  Stewart performed
its parking lot construction in two phases: phase one was the back parking lot
and phase two was the front parking lot. Stewart began preliminary work on the back
parking lot in late August 2002 before the final specifications were finished
or the contract was signed.  Alliance’s
engineer, the Murillo Company, received approval from Alliance and GE for the
parking lot specifications on October 3, 2002. 
The specifications called for 2 inches of asphalt atop 10 inches of
crushed limestone base, over 8 inches of lime-stabilized subbase.  The parties refer to these specifications as
the “2/10/8 specifications.”

Alliance,
through Murillo, performed periodic testing of the compaction and density of
the soil and the layers of the materials used in the construction of the
parking lots.  Stewart’s manager of its
site work division testified that its crews would not move forward to the next
phase of construction until Murillo’s technician approved the density test
results. 

Stewart
completed construction of the back lot on November 11, 2002.  On November 20, 2002, while Stewart was working
on the front parking lot, the first problems were reported in the back
lot.  Asphalt cracked and the lot
developed numerous potholes.  According
to Stewart’s manager, potholes were “popping up in a unique frequency.”  Stewart first patched a pothole in “mid to
late November” and thereafter repeatedly returned to the back lot to repair or
patch potholes as they appeared. 

Stewart
completed construction of the front lot on December 19, 2002.  The  
front lot was first patched just two days later on December 21,
2002.  Stewart patched the two lots
approximately 36 times in about six weeks.

          In
early February 2003, Stewart and Alliance jointly engaged an independent
third-party engineering company, Atser, to determine the cause of the continuing
failures.  Atser determined that the
immediate cause of the failures was water damage.  Stewart then hired Atser to determine the
source of the water.  In April 2003, over
four months after the first failure in the back parking lot, the parties
learned that another subcontractor had found and repaired a water supply line located
under the parking lot that had been leaking for an unknown period of time. 

          GE
withheld $1,142,300 from the payments specified in its contract with Alliance due
to the problems with the parking lots. 
Alliance, in turn, did not make full payments to Stewart.  Alliance had previously made some progress
payments to Stewart, so only $468,802 remained to be paid to Stewart under the
Site Work Subcontract and $268,513 under the Concrete Subcontract.[2]  Relying on a cross-default provision in the
Concrete Subcontract, Alliance withheld payments under that subcontract even
though Stewart had satisfactorily performed under it.[3]  Thus, a total of $737,315 was not paid to
Stewart.  Because GE had withheld
$1,142,300, Alliance also did not pay other subcontractors, the quality of
whose work was not in dispute. 

          Stewart
filed suit for the unpaid amounts under the subcontracts.  Stewart sued Alliance, Turner, and GE.  Alliance filed a counterclaim against Stewart
for breach of the Site Work Subcontract. 
       After Stewart filed suit,
Alliance settled with GE.  The settlement
allocated the $1,142,300 contract balance as follows:  

• $422,950 for non-affected subcontractors and these
amounts were paid directly to subcontractors using joint checks;

 

• $358,215 paid by G.E. to another company to repair the
front parking lot; 

 

• $261,135 withheld by G.E. to repair the back parking
lot; and

 

• $100,000 withheld by G.E. for legal fees and other
costs. 

 

Turner testified that Alliance agreed
to this arrangement in order to pay the subcontractors who were not involved in
the parking lot dispute. 

          At
trial the issue of whether Stewart complied with the specifications was
contested.  The parties presented
competing expert witnesses and numerous fact witnesses.  Donald Stewart, a co-owner and vice president
of Stewart, acknowledged that a report from Murillo on November 19, after the
back lot had been paved, stated that the back lot did not have the required 8
inches of lime-stabilized subbase.  He
claimed that Alliance knew the results of the report and waived compliance with
this specification.  Stewart’s expert,
Fred Martinez from Atser, opined that the problems with the lots were caused by
water leaks on the property.  Martinez
admitted, however, that sample measurements taken in the lots did not all meet
the 2/10/8 specifications.  For example,
several of the test pits had an asphalt thickness of less than two inches and
several pits had less than 10 inches of crushed limestone.  Additionally, Atser did not test the depth of
the lime-stabilized subbase.  Alliance’s
expert, James Hanks Jr., testified that Stewart did not comply with the
specifications for all three layers for both lots and attributed the failures
of both parking lots in part to these deficiencies. 

Alliance also
contended that Stewart constructed the lots while the soil was wet.  Stewart’s site work manager said the heavy
rain in October 2002 caused a month delay. 
He testified that when the site was wet, the crew could not perform much
work other than efforts to help dry the site. 
Nevertheless, Alliance would not move Stewart’s completion date from the
end of December.  Despite the time
issues, Stewart’s site work manager and operating foreman both stated that
Murillo’s density testing examined the wetness of the soil and the limestone
base and that they did not work if the test results indicated the materials
were too wet. 

After hearing
the evidence, the jury found that: Stewart substantially performed its
obligations to Alliance under the Site Work Subcontract; Alliance failed to
comply with its obligations to Stewart under provisions of the Site Work
Subcontract; Turner misapplied trust funds from the Concrete and Site Work
Subcontracts; and Alliance did not act in good faith in withholding payment
from Stewart.  The jury question directed
at Alliance’s counterclaim for breach of contract was not reached because it
was predicated on the jury finding that Stewart did not substantially perform the
Site Work Subcontract.  The jury found
damages for Stewart in the amounts remaining under the Site Work Subcontract;
it was not asked for damages for breach of the Concrete Subcontract.   The jury also found that Stewart’s work
included defects that occurred before December 20, 2002, which was the day
after Stewart finished the front lot. 

          Post-trial,
the trial court entered a finding that stated 

The Court makes the following express finding, pursuant
to Rule 279 of the Texas Rules of Civil Procedure.  Such finding is made in support of, but prior
to rendering, final judgment in this cause. 

 

1.       The cost of remedying any deficiency in
the construction of the parking lot to bring the lot from substantial to
complete performance is zero.

 

The trial court did not, and was not
asked to, make any finding under Rule 279 on whether Alliance breached the
Concrete Subcontract or the amount of damages for breach of the Concrete
Subcontract, and these issues were not submitted to the jury. The trial court
then rendered judgment in favor of Stewart and against Turner and Alliance,
jointly and severally, awarding Stewart the following damages: (1) $268,513,
the unpaid balance of the Concrete Subcontract; (2) $468,802, the unpaid
balance of the Site Work Subcontract; (3) $498,142.13 in statutory interest for
failure to pay Stewart promptly; (4) attorneys’ fees through trial in the
amount of $350,000; and (5) pre-judgment interest, costs, and contingent
appellate attorneys’ fees. 

           The jury answered three questions relating to
the amount of Stewart’s damages. 
Question 4 asked the amount of damages for Stewart’s loss from “the
misapplication of trust funds from the Concrete Subcontract,” to which the jury
answered $268,513.  In response to Question
19, the jury found $468,802 for damages for “the misapplication of trust funds
under the Site Work subcontract.”  In
response to Question 11, the jury found $468,802 for Alliance’s “failure to
comply with the Site Work Subcontract.” 
Each of these questions was conditioned on the jury’s answers to various
predicate questions.  We will address
each damages question and its predicates in turn.

Standard of Review 

          We review the
trial court’s submission of instructions and jury questions for an abuse of
discretion.  Moss v. Waste Mgmt. of Tex., Inc., 305 S.W.3d 76, 81 (Tex. App.—Houston [1st Dist.] 2009, no
pet.).  A trial court abuses its
discretion when it acts in an arbitrary or unreasonable manner, or if it acts
without reference to any guiding rules or principles.  Id. 
A trial court has wide discretion in submitting instructions and jury
questions.  Id.  

          This standard
of review, however, may encompass another standard, depending on the nature of
the complaint concerning the charge.  Block v. Mora, 314 S.W.3d 440, 444–45 (Tex. App.—Amarillo 2009, pet.
dism’d) (citing W.
Wendell Hall, Standards of Review in Texas, 38 St. Mary’s L.J. 47, 195–200 (2006)).  In this appeal, Turner and Alliance
contend that no evidence supported the submission of several questions to the
jury.  In a no evidence, or legal
insufficiency, review, “[t]he final test . . . must always be whether the
evidence at trial would enable reasonable and fair-minded people to reach the
verdict under review.”  City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005). “[L]egal-sufficiency review in the
proper light must credit favorable evidence if reasonable jurors could, and
disregard contrary evidence unless reasonable jurors could not.”  Id.  “If the evidence . . . would enable reasonable
and fair-minded people to differ in their conclusions, then jurors must be
allowed to do so.”  Id. at 822.  “A reviewing
court cannot substitute its judgment for that of the trier-of-fact, so long as
the evidence falls within this zone of reasonable disagreement.”  Id.  Although the reviewing court must consider
evidence in the light most favorable to the verdict, and indulge every
reasonable inference that would support it, if the evidence allows only one
inference, neither jurors nor the reviewing court may disregard it.  Id.




 

Misapplication of Trust Funds

          In
his first, second, third, and fourth issues, Turner contends that there is no
evidence to support the jury’s answers concerning misapplication of trust funds
because no evidence shows that trust funds existed, Turner controlled trust
funds, Turner diverted trust funds, or Turner was a trustee.     

A.      The jury charge concerning misapplication
of trust funds

          The jury was
asked two series of questions concerning the misapplication of trust funds: one
for the Concrete Subcontract and one for the Site Work Subcontract.  In the first series, the jury was asked
whether Turner “misapplied trust funds from the Concrete Subcontract
for which Stewart Builders was an intended beneficiary.”  In the second series, the jury was asked
whether Turner misapplied trust funds from the Site Work Subcontract.  The jury answered “yes” to both
questions.  There were two damages questions,
each predicated on an affirmative answer to the questions concerning
misapplications of trust funds: the first asked the jury to find an amount “for
[Stewart’s] loss, if any, resulting from the misapplication of trust funds from
the Concrete Subcontract” and the second for the loss from misapplication of
trust funds from the Site Work Subcontract. 
The jury found damages of $268,513, the unpaid balance of the Concrete
Subcontract, for the first and $468,802, the unpaid balance under the Site Work
Subcontract, for the second.

B.      Sufficiency of the evidence to show Turner
was a trustee

          In
his third issue, Turner contends that there is no evidence to show that he was
a trustee as defined by the jury charge. 
The two liability questions asked, “Did Mr. Turner misapply trust funds
from the [contract in question—either the Concrete Subcontract or the Site Work
Subcontract] for which Stewart Builders was an intended beneficiary?”  The jury was instructed that 
“[a] trustee who, intentionally or knowingly, directly or indirectly
retains, uses, disburses, or diverts trust funds without first fully paying all
current or past due obligations incurred by the trustee to the beneficiaries of
the trust funds, has misapplied the trust funds.”  This language closely follows
the statutory language of section 162.031(a) of the Texas Property Code.  See Tex.
Prop. Code Ann.
§ 162.031(a) (West Supp. 2010).  

          The
jury charge definition of trustee did not follow the statutory definition.  In the jury charge, “trustee” was defined as
“an owner, contractor, or subcontractor who receives trust funds or who has
control or direction of trust funds.” 
The Texas Property Code definition is different: “A contractor,
subcontractor, or owner or an officer,
director, or agent of a contractor, subcontractor, or owner, who receives
trust funds or who has control or direction of trust funds, is a trustee of the
trust funds.”  Tex.
Prop. Code Ann.
§ 162.002 (West 2007) (emphasis added).  Nevertheless, because no party objected to
this instruction, we apply the definition actually given to the jury in
reviewing the sufficiency of the evidence. 
Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 715 (Tex. 2001) (holding incorrect
statement of law in charge is used to review sufficiency of the evidence in
absence of objection).

          There is no evidence that Turner was “an owner, contractor,
or subcontractor under a construction contract for the improvement of specific
real property.”  It is uncontroverted
that Alliance was the contractor, Stewart the subcontractor, and GE the
owner.  Turner signed the contract in his
capacity as CEO of Alliance, not in his individual capacity.  Although Turner may have been “an
officer, director, or agent of a contractor,” see Tex. Prop. Code Ann. § 162.002, the jury was
not given a definition that included an officer, director, or agent of a
contractor as a trustee.  In addition,
the jury charge defined a misapplication of trust funds as a trustee not fully
paying “obligations incurred by the trustee.”  (Emphasis added).  There is no evidence that Turner individually
owed any contractual obligations to Stewart. 
Therefore, we conclude that no evidence supports the jury’s finding that
Turner, individually, was a trustee who misapplied trust funds.  There
was no trust fund jury question submitted for Alliance, and therefore no basis
for finding Alliance liable for misapplication of trust funds.

          We
sustain Turner’s third issue.  Because we
sustain this issue, we need not address the first, second, and fourth issues that present
alternative arguments concerning the misapplication of trust funds.

Breach of Contract

          In its tenth, eleventh, twelfth and
thirteenth issues, Alliance raises various challenges concerning the trial
court’s submission of Question 5 and related questions concerning Stewart’s
breach of contract claim on the Site Work Subcontract.  

A.      The jury charge concerning breach of Site
Work Subcontract

          The jury found in answer to Question 5(a)
that Alliance failed to comply with its obligations to Stewart under the Site
Work subcontract by “failing to pay contract balances.”  In Question 7, the jury was asked if Alliance’s
failure to comply was excused by Stewart’s prior material breach or by
Stewart’s misrepresentation or concealment of material facts.  The jury was also instructed that Alliance’s
failure to comply was not excused if Stewart substantially performed the Site
Work Subcontract.  The jury found that
Alliance’s failure to comply was not excused.  
In answer to Question 11, which was predicated on findings of breach
(Question 5(a)) and no excuse (Question 7), the jury found that Stewart’s
damages for Alliance’s failure to comply were in the amount of $468,802, the
amount that remained unpaid on the Site Work Subcontract.   

B.      Sufficiency of the
evidence to show breach of Site Work Subcontract

          In its tenth issue, Alliance
asserts the trial court erred by submitting Question 5(a) to the jury because
there is “no evidence or insufficient evidence of strict performance or ‘full
performance.’”  Alliance argues Question
5(a) should not have been submitted because recovery of the full contract
balance by Stewart requires full performance.  
In other words, Alliance asserts that Question 5(a) is not a correct
statement of the law concerning breach of contract.[4]  The jury was not, however, given a question,
definition, or instruction concerning full performance.  At the charge
conference, Turner and Alliance objected to the submission of Question 5(a)
because “there is no evidence that [Alliance] failed to pay the contract
balance unjustifiably.”[5]  This objection was overruled.  Alliance did not request a definition or
instruction regarding strict performance or full performance.  Alliance also did not object that the measure
of damages in Question 11 was incorrect or that it should include an offset for
cost of repairs. 

          Absent
an objection or requested definition or instruction made to the trial court
informing it that the proposed charge incorrectly states the law, we must
measure the sufficiency of the evidence based on the charge given.  Wal-Mart Stores,
Inc., 52 S.W.3d at 715 (holding review of
sufficiency of evidence is made against charge given, even if incorrect
statement of law, in absence of objection).  Alliance did not object to the charge for
failing to ask the jury concerning full performance or failing to inform the
jury about full performance by definition or instruction.  We therefore must measure the sufficiency of
the evidence against the charge given.  See id. 
Here, the charge simply asks whether Alliance failed to pay
Stewart.  The evidence is undisputed that
Alliance did not.[6]  Alliance admits the balance of $468,802 was
not paid, instead relying on the argument that Stewart is not entitled to the
full amount based on it having only substantially performed the contract, not
fully performing it.  We, therefore,
conclude that there is some evidence to support the jury’s answer to Question
5(a).

          We
overrule Alliance’s tenth issue concerning Question 5(a).  We therefore do not address Turner and
Alliance’s eleventh and twelfth issues concerning subsections (b) and (c) of
Question 5.

C.      Conflict in jury’s answers  

          In its thirteenth
issue, Alliance contends that the trial court erred in awarding damages of $468,802
for the breach of the Site Work Subcontract because a finding of full
performance conflicts with the jury’s answer to Question 9 that defective
construction caused patching and repair work. 
Question 9 does not, however, inquire about the significance or quantity
of the defects in the construction. 
Thus, the jury could have found that, although there were defects in
construction, the defects were not significant enough to constitute a material breach.


Alliance also argues that there is
an inconsistency between the answers to Question 5(a) and Questions 5(b) and
5(c) because, if Stewart had fully performed to be entitled to the full payment
under the Site Work Subcontract, there would be no need for Stewart to cure or
perform warranty work.  But this claimed
error (as well as the claimed error for an inconsistency between Questions 7
and 9) was not preserved.  To
preserve error that the jury’s findings conflict or are inconsistent, the
complaining party must raise an objection in the trial court before the jury is
discharged.  Oyster Creek Fin. Corp.
v. Richwood Inv. II, Inc.,
176 S.W.3d 307, 324 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); see
also Kennedy Ship & Repair, L.P. v. Pham, 210 S.W.3d 11, 24 (Tex. App.—Houston [14th Dist.] 2006, no
pet.).  Alliance did not object that the
jury’s findings were in conflict. 
Therefore, the issue of whether the findings conflicted is not preserved
for review.  See Oyster Creek Fin. Corp., 176 S.W.3d at 324.  

          We
overrule Alliance’s thirteenth issue. 

D.      Breach of the Concrete Subcontract

          As
discussed above, it is undisputed that Stewart fully and satisfactorily
performed under the Concrete Subcontract. 
Thus, this issue did not need to be submitted to the jury.  See
Bank of Texas v. VR Elec., Inc., 276 S.W.3d 671, 677 (Tex. App.—Houston
[1st Dist.] 2008, pet. denied).  The only
issue in dispute was whether Alliance properly withheld payment for the
Concrete Subcontract based on a breach of the Site Work Subcontract.  Because the jury found that Alliance breached
and that breach was not excused by a prior material breach by Stewart, the jury
resolved this issue against Alliance. 
Therefore, the trial court’s judgment against Alliance for $268,513 for
the unpaid balance of the Concrete Subcontract may be upheld on this undisputed
evidence.  See Bank of Texas, 276 S.W.3d at 677 (“[W]hen the evidence
conclusively establishes a claim, the claim may be part of the judgment, even
if no jury question on the claim was submitted.”). 

Substantial
Performance

          In their sixth, seventh, eight, and
ninth issues, Turner and Alliance raise several arguments concerning the trial
court’s award of $468,802 in damages for substantial performance.  We have already concluded that Stewart is
entitled to recover for breach of the Site Work Subcontract.  We therefore do not address Turner and
Alliance’s issues six, seven, eight, and nine.

Interest on the Damages Award

          In their fifteenth and sixteenth issues,
Alliance and Turner contend that there is no evidence to support a finding that
Alliance or Turner violated the prompt-pay provisions of the Texas Property
Code.  See Tex. Prop.
Code Ann. §§ 28.001–.10 (West 2000).  Under the Texas Property Code, a contractor must
promptly pay a subcontractor after receiving payment from the owner.  See id.
§ 28.002(b).  Section 28.004 of the Texas
Property Code provides for 18% interest on payments not paid as required by
section 28.002.  Id. § 28.004(a), (b).  




 

A.      Sufficiency of the evidence that Alliance
received payment from GE  

In their fourteenth issue, Alliance and Turner argue that
the trial court erred in submitting Question 16 to the jury because there is no
evidence that Alliance received payment from GE.  According to Alliance and Turner, the
settlement with GE involved payments to Alliance and Alliance’s other
subcontractors, not to Alliance alone and those payments were solely for the
other subcontractors’ work. One requirement for the
award of the statutory
18% interest is that the contractor “receives a payment” from the owner but does
not pay its subcontractor.  See id. § 28.002(b).  If the contractor receives such a payment but
fails to pay a subcontractor for its work, the contractor is liable under
section 28.002.   

The statute further provides an exception that the
contractor may withhold a disputed payment to a subcontractor if “a good faith
dispute exists concerning the amount owed for a payment,” including a dispute
“regarding whether the work was performed in a proper manner.”  Id. §
28.003(b). 

  Question 16 asked
about the exception to the general rule, asking whether Alliance “act[ed] in
good faith in withholding payment from Stewart.”  The jury was instructed that Alliance could
withhold payment if there was a good faith dispute concerning the amount
owed.  The jury was further instructed
that a good faith dispute included “a dispute regarding whether work was
performed in a proper manner.”  The jury
answered “no.”  Question 16 does not ask
whether Alliance received a payment from GE or otherwise inform the jury by
instruction or definition that payment by GE to Alliance was required before
the jury could answer “yes” to Question 16. 
At the charge conference, Turner and Alliance did not object to the
submission of Question 16 or request a definition or instruction concerning
payment by GE.  Therefore, we consider
the sufficiency of the evidence in light of the charge given.  Wal-Mart
Stores, Inc., 52 S.W.3d at 715.  Turner and Alliance only assert that there is
no evidence that GE paid Alliance.  They
do not assert on appeal that the evidence is insufficient in any other
way.  As charged, whether GE paid
Alliance is irrelevant to the jury’s answer to Question 16.   

          We overrule Turner and Alliance’s
fourteenth issue.

B.      Sufficiency of the evidence to support the
interest award against Turner

          In
his fifteenth issue, Turner contends that the trial court erred in rendering
judgment for 18% interest against him because there is no evidence that he was
a contractor.  Section 28.002 of the
Texas Property Code applies to a “contractor.” 
See Tex. Prop. Code Ann. § 28.002 (West 2000).  Turner argues that Alliance was the
contractor, not Turner.  

          Stewart’s
response to this argument is that “there is nothing in the language of Chapter
28 [of the Property Code] that would shield a contractor’s CEO from individual
liability for prompt-pay violations, especially where, as here, Alliance never
disputed that at all times, Turner was performing in his capacity as the CEO of
Alliance.”  Section 28.001 defines a
contractor as “a person who contracts with an owner to improve real property or
perform construction services for an owner.” 
Id. § 28.001(1).  The definition does not include an officer of
a contractor.  Alliance, not Turner,
contracted with GE to perform construction on GE’s property, and Alliance, not
Turner, contracted with Stewart.  Because
Turner was not the contractor, we conclude that the trial court erred by
rendering judgment that Turner, individually, was liable for 18% interest under
the Property Code.[7]


          We
sustain Turner’s fifteenth issue. 

Segregation of Attorneys’ Fees

          In
their sixteenth issue, Turner and Alliance contend that Stewart did not
segregate its attorneys’ fees among the various defendants and causes of action
involved in this case.      

          When
a party presents multiple claims, some of which support recovery of attorneys’
fees and some of which do not, the party must segregate the attorneys’ fees
attributable to claims for which fees are recoverable.  Tony
Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 310–11 (Tex. 2006).  In its fifth amended petition, Stewart
alleged nine causes of action, some of which permit the recovery of attorneys’
fees (e.g., breach of contract) and some do not (e.g., negligence).  As noted by the Texas Supreme Court, some
evidence of segregation is required concerning even the drafting of a petition
that includes both causes of action for which fees are recoverable and those
for which fees are not.  Id. at 314.  Therefore, Stewart was required to present
evidence of the segregation of its fees. 
Id.  

          In
its brief, Stewart contends that the parties agreed not to provide testimony
regarding the segregation of attorneys’ fees. 
However, the record citation to support this contention is not to any
pleading or agreement made on the record, but to the assertions in Stewart’s
response to Turner and Alliance’s motion for new trial.  This bare assertion by Stewart is not
evidence.     

The record shows
that Turner and Alliance objected to the submission of the attorneys’ fees
question based on the lack of segregation. 
The trial court explained that its understanding of the parties’
agreement on attorneys’ fees was “to go ahead and submit it, but if it is an
issue, the parties have agreed to argue that to the Court, and if legally the
Court decides that they should be segregated, then you will argue that to the
Court as well as to how that would be accomplished.”  Counsel for Turner and Alliance and counsel
for Stewart both stated that was their agreement.  Thus, the agreement in the record contradicts
Stewart’s argument in its brief.  After
the jury trial, Turner and Alliance did raise the issue again in their motion
for new trial.  The motion for new trial
was overruled by operation of law.  

          Because
the record does not clearly set forth an agreement between the parties on the
segregation of attorneys’ fees, but did show that the parties agreed to argue
segregation to the court, we remand to the trial court to segregate the
fees.  See id.  Additionally, remand for attorneys’ fees
is appropriate because our disposition of the issues in this appeal results in
a significantly reduced award.  See
Young v. Qualls, 223 S.W.3d
312, 314–15 (Tex. 2007).  Therefore, the
trial court must reconsider the issue of attorneys’ fees through the trial in
this case.  


Conclusion

          We
affirm the portion of the trial court’s judgment in which it awarded Stewart
$268,513 for breach of the Concrete Subcontract and $468,802 for breach of the
Site Work Subcontract.  We reverse the
portion of the trial court’s judgment in which it awarded Stewart $268,513 for
misapplication of trust funds from the Concrete Subcontract and $468,802 for misapplication
of trust funds from the Site Work Subcontract, and we render judgment that
Stewart take nothing on its claims for misapplication of trust funds.  We reverse the award of 18% prompt-pay interest
rendered against Turner individually and render judgment that Stewart take nothing
on its prompt-pay interest claim against Turner individually.  We reverse the portion of the judgment in
which the trial court awarded attorneys’ fees and remand this cause for the
trial court to reconsider the issue of attorneys’ fees.

          

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Justices Jennings, Higley, and Brown.




 

 

Appendix

QUESTION NO.1

Did Stewart Builders substantially perform its obligations
to Alliance Construction under the Site Work Subcontract?

 

A party substantially completes a contract if: (1) it
satisfies the essential elements of the contract, and (2) any defect in
performance does not destroy the purpose of the contract

 

You are instructed that to establish “substantial
performance,” a party must show that:

 

(1) it has not willfully departed from the terms of the Site
Work Subcontract,

 

(2) It has not omitted essential points of the Site Work
Subcontract,

 

(3) It has honestly and faithfully performed the Site Work
Subcontract in its

material and substantial particulars, and

 

(4) The only variance from the strict and literal
performance of the Site Work Subcontract consists of technical or unimportant
omissions or details. 

 

QUESTION NO.5

 

Did Alliance Construction fail to comply with one or more of
its obligations to Stewart Builders under the Site Work Subcontract?

 

Answer “Yes” or “No” for each of the following:

 

(a) failure to
pay contract balances  _____________

If your answer to Question No.5 is “Yes,” then  answer the following question.

Otherwise, do not answer the following question.




 

QUESTION
NO.7

 

Was Alliance Construction’s failure to comply with the Site
Work Subcontract excused?

 

1.     Failure
to comply by Alliance Construction is excused by Stewart Builders’ previous
failure to comply with a material obligation of the same agreement.

 

2. Failure to comply by Alliance
Construction is excused if all the following     circumstances occurred;

 

1. Stewart Builders

 

a. by words or conduct made a
false representation or concealed     material
facts,

 

b. with knowledge of the facts
or with knowledge or information that       would
lead a reasonable person to discover the facts, and

 

c. with the intention that
Alliance Construction would rely on the false

representation or concealment in
acting or deciding not to act; and

 

2. Alliance Construction

 

a. did not know and had no means
of knowing the real facts, and

 

b. relied to its detriment on
the false representation or concealment of

material facts.

 

3.  Failure to comply by Alliance Construction is
not excused if Stewart Builders substantially performed the Site Work
Subcontract

 

If you answered “No” to Question No.1, then answer the
following question. Otherwise, do not answer the following question.

 

QUESTION NO. 6

Did Stewart Builders fail to comply with one or more of its
obligations to Alliance Construction under the Site Work Subcontract?

 

Answer “Yes” or “No” to each of the following:

 

(a) not building to 2-10-8 specifications: _____

 

(b) building
when conditions were too wet: _____

If your answer to Question No. 5 was “Yes,” and your answer
to Question No. 6 was “No,” then answer the following question. Otherwise, do
not answer the following question.

 

QUESTION
NO. 11

What sum of money, if any, if paid now in cash, would fairly
and reasonably compensate Stewart Builders for its damages, if any, that
resulted from Alliance Construction's failure to comply with the Site Work
Subcontract?

 

Do not include any amount for interest on damages, if any.

 

Answer separately in dollars and cents for damages, if any.

 

a. Contract balance: _______________

The unpaid
contract balance, including any agreed change orders.

If your answer to Question No. 18 is “Yes,” then answer the
following question.

Otherwise, do not answer the following question.

 

QUESTION
NO. 19

 

What sum of money, if any, if paid now in cash, would fairly
and reasonably compensate Stewart Builders for its loss, if any, resulting from
the misapplication of trust funds under the Site Work Subcontract?

 

Answer in dollars and cents, if any.

 

Answer: $______

 











[1]
         St. Paul Mercury Insurance
Company also appealed but later dismissed its appeal.





[2]           The total amount of the Concrete
Subcontract was $1,215,500.  The total amount
of the Site Work Subcontract was $908,937.





[3]           Stewart does not contend that the
cross-default provision was inapplicable. Its complaint was that it performed
and was entitled to payment.





[4]           Under the common law, strict or full compliance
with the terms of a construction contract was required before a party could
recover for the failure of the other party to pay.  Dobbins
v. Redden, 785 S.W.2d 377, 378 (Tex. 1990); Vance v. My Apartment Steak House of San Antonio, Inc., 677 S.W.2d
480, 481 (Tex. 1984); Atkinson v. Jackson
Bros., 270 S.W. 848, 850 (Tex. Comm’n App. 1925, holding approved).  In building or construction contracts,
however, this rule has been modified by the doctrine of substantial performance.  Vance,
677 S.W.2d at 481.  The doctrine of
substantial performance is an equitable doctrine that allows a contractor who
has substantially completed a construction contract to sue on the contract
rather than having to rely on a cause of action for quantum meruit.  Id.
at 482.  The doctrine of substantial
performance recognizes that the contractor has not completed construction and,
therefore, is in breach of the contract. 
Atkinson, 270 S.W. at
851.  “[W]hen a breaching [party] brings
suit to recover for his substantial performance and the owner alleges
remediable defects in the construction, the [party] is required to prove that
he did substantially perform, the consideration due him under the contract, and
the cost of remedying the defects due to his errors or omissions.”  Vance,
677 S.W.2d at 483.

 

The doctrine of substantial performance overlaps with
the requirement that the breach of a contract must be material.  See Gentry
v. Squires Const., Inc., 188
S.W.3d 396, 403 n.3 (Tex.
App.—Dallas 2006, no pet.).  “[T]he doctrine assumes, if there is substantial performance,
the breach is immaterial.”  Gentry, 188 S.W.3d at 403 n.3.  In construction disputes between a contractor
and owner, 

 

it
is common to state the issue, not in terms of whether there has been an uncured
material failure by the contractor, but in terms of whether there has been substantial performance by him.
 This manner of stating the issue does
not change its substance, however, and the rule stated in this Section
[requiring “there be no uncured material” breach by the other party] also
applies to such cases. If there has been substantial although not full performance, the building
contractor has a claim for the unpaid balance and the owner has a claim only
for damages. If there has not been substantial performance, the building contractor has no
claim for the unpaid balance, although he may have a claim in restitution (§
374). The considerations in determining whether performance is substantial are those listed in
§ 241 for determining whether a failure is material.  

 

            Restatement (second) of Contracts
§ 237 cmt. d.  

 

Thus, substantial performance
may be raised by a party seeking to recover on a contract that was not fully
performed or may be raised as the defensive issue of prior material breach by
the party defending a breach of contract action.  

 

In a substantial performance
claim, the
contractor must prove three elements to prevail: its substantial performance,
the amount unpaid under the contract, and “the cost of remedying the defects
due to his errors or omissions.”  Vance, 677 S.W.2d at 483; see also Weitzul Constr., Inc. v. Outdoor
Environs, 849 S.W.2d 359, 363 (Tex. App.—Dallas 1993, writ denied).  Thus, the doctrine of substantial
compliance excuses some contractual deviations or
deficiencies.  Burtch v. Burtch, 972 S.W.2d 882, 889 (Tex. App.—Austin 1998, no
pet.).  If defects in the contractor’s performance
are demonstrated, and the owner as a result of those defects paid only a
portion of the contract amount, the cost of remedying the defects “is credited
against the balance of” the contractor’s unpaid balance.  Vance,
677 S.W.2d at 482.

 

            Here,
the jury found that Stewart had substantially performed (Question 1) and that
Stewart did not commit a prior material breach (Question 7).  Submitting both questions that overlapped
created some of the confusion in the charge because there are different
measures of damages and different burdens of proof for the two doctrines.





 

[5]
          Turner and Alliance further
objected that Question 5(a) “will create a potential conflict with Question
Number 1 [the substantial performance question].”  This objection was overruled, and there was
no conflict in the jury’s answers. 

 





[6]
       Indeed,
Alliance argues that “[t]his undisputed fact should not have been submitted to
the jury.”  While this jury question may
have been unnecessary, it was not harmful if it was undisputed.  The root of the problem with the charge on
the contract issues was that the charge asked about this same cause of action
in two different variations.  The jury questions pertinent to the substantial performance and breach of
contract claim are set forth in the Appendix.

 

A substantial performance
question (Question 1) was submitted but there was no damages question tied
directly to that question (one damages question, Question 19, was predicated on
an affirmative finding of substantial performance, but it inquired only about
damages from misapplication of trust funds). A failure to comply question
(Question 5(a)) and a question that included substantial performance in it
(Question 6) were also submitted, but the damages question (Question 11)
predicated on the findings from those two questions did not inquire about the
amount of an offset for repairs—the
damages were defined as the unpaid balance on the contract. Given the two
questions that were predicates to this damage question, Alliance needed to
object that the damages question should have included an offset for the cost of
repairs.  Alliance did not make this
objection.





[7]           Furthermore, we note that the jury did
not find that Turner violated the prompt-pay provisions of the Texas Property
Code.  Question 16 only inquired whether
Alliance acted in good faith in withholding payment from Stewart.