**Opinion issued July 11, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-12-00622-CV**

———————————

**D&M MARINE, INC. D/B/A PHIPPS & COMPANY HOMES, Appellant**

**V.**

**J. NEAL TURNER AND KERIE B. TURNER, Appellees**

---

**On Appeal from the 431st District Court**
**Denton County, Texas[1]**
**Trial Court Case No. 2008-60228-393**

---

**O P I N I O N**

---

[1]    The Texas Supreme Court transferred this appeal from the Court of Appeals for the Second District of Texas. Misc. Docket No. 12-9107 (Tex. June 18, 2012); *see also* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005) (authorizing transfer of cases). We are unaware of any conflict between precedent of the Court of Appeals for the Second District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

J. Neal Turner and Kerie B. Turner sued D&M Marine, Inc. d/b/a Phipps & Company Homes and others over damage in the construction of their home. The jury found in favor of the Turners and against D&M Marine on the Turners' claims of negligence, deceptive trade practices, breach of warranty, and attorneys' fees. The trial court awarded engineering and consulting fees after a post-trial hearing, and rendered judgment. In four issues, D&M Marine argues (1) the trial court committed charge error by excluding a proposed question and including an incomplete instruction, (2) the trial court abused its discretion by considering hearsay in determining the award of engineering and consulting fees, (3) the trial court abused its discretion by allowing the Turners' attorney to testify about the reasonableness of a settlement offer, and (4) the evidence is factually insufficient to support the award of attorneys' fees.

We affirm, in part, and reverse and remand, in part.

## Background

In late 2005, the Turners bought a home in Plano, Texas. Some time after they moved in, they discovered problems with the home, which ultimately led to this suit. The Turners asserted claims against D&M Marine for negligence, violations of the Deceptive Trade Practices Act ("DTPA"), and breach of warranty. The jury found in favor of the Turners and against D&M Marine on all three claims. It also awarded attorneys' fees to the Turners.

2

To prove up attorneys' fees, the Turners presented one of their attorneys, Brent Lemon, to testify. Lemon's testimony was based on the exhibit introduced into evidence showing the fees incurred, and his testimony largely tracked the information on the exhibit. The total amount of hours up through trial was 572.2 hours. These hours represented the work of two attorneys. Lemon testified that $300 per hour was a reasonable fee for both of them. Accordingly, the Turners sought $171,660 in attorneys' fees up through trial. The jury awarded them the full amount.

Another issue presented to the jury was whether a settlement offer by D&M Marine to the Turners was reasonable. Such a determination would impact any award of attorneys' fees. During his testimony, Lemon was asked if he thought the settlement offer was reasonable. D&M Marine objected, and the trial court overruled the objection. Lemon testified that he did not think the offer was reasonable. Lemon did not testify further on the matter.

In addition to attorneys' fees, the Turners sought recovery of "reasonable and necessary engineering and consulting fees" under the Texas Residential Construction Liability Act. During trial, the parties announced an agreement in open court to "submit any of the . . . fees under the [Act] to the Court for determination post-trial." The trial court accepted the agreement. After trial, but more than 30 days before the hearing on the fees, the Turners submitted affidavits

3

in support of their request for fees. At the hearing, D&M Marine objected to the affidavits, arguing they were hearsay. The trial court overruled the objections, considered the affidavits and accompanying evidence, and ultimately awarded fees to the Turners.

During the charge conference at trial, D&M Marine objected to one jury instruction, arguing it was incomplete. It also requested an additional jury question, which the trial court denied. For the jury instruction, the charge included an instruction defining "construction defect," based on the applicable statute. The instruction did not include the portion of the statute that excluded certain specific problems that did not constitute a construction defect. D&M Marine requested the trial court to include the list of excluded problems in the instruction. The trial court denied the request. For the jury question, D&M Marine requested the inclusion of a question concerning comparative responsibility for the Turners' DTPA claim. The trial court denied this request as well.

## Jury Charge

In its fourth issue, D&M Marine argues that the trial court abused its discretion by not using its proposed definition of "construction defect" and by refusing to submit a comparative responsibility question on the Turners' DTPA claim.

4

## A.    Standard of Review

We review a challenge to the trial court's jury charge under an abuse of discretion standard. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *Moss v. Waste Mgmt. of Tex., Inc.*, 305 S.W.3d 76, 81 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Tex. Dep't of Human Servs.*, 802 S.W.2d at 649; *Moss*, 305 S.W.3d at 81. A trial court has wide discretion in submitting instructions and jury questions. *Moss*, 305 S.W.3d at 81.

If we determine that the jury charge was erroneous, we must then consider whether the error requires reversal. *See Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 225 (Tex. 2010). Generally, charge error requires reversal of a judgment only when the error was harmful in the sense that it probably caused rendition of an improper verdict. *Id.*

## B.    Analysis

D&M Marine challenges both an instruction included in the charge and a question excluded from the charge. For the excluded question, D&M Marine argues that the trial court improperly excluded a question on comparative responsibility for the Turners' DTPA claim. The Turners argue that this issue has been waived. We agree.

5

The jury charge included questions on claims for negligence, DTPA, and breach of warranty. The jury found D&M Marine liable on all three claims. The jury's award of damages for the DTPA claim was the same as its award for damages for the breach of warranty claim. The trial court's judgment awards the Turners this amount in damages, but does not specify which claim the award stems from.

"Generally speaking, an appellant must attack all independent bases or grounds that fully support a complained-of ruling or judgment. If an appellant does not, then we must affirm the ruling or judgment." *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citation omitted). D&M Marine does not challenge the jury's determination of liability or damages on the Turners' breach of warranty claim. Because the breach-of-warranty determination would independently support the judgment, we must affirm the judgment regardless of any alleged error in the charge on the DTPA claim. *See id.*

For the disputed jury instruction, D&M Marine challenges the court's definition of "construction defect." The parties agree that former section 401.004 of the Texas Property Code was the right source for the definition. Act of June 2, 2003, 78th Leg., R.S., ch. 458, § 1.01, sec. 401.004, 2003 Tex. Gen. Laws 1703, 1704 (expired Aug. 31, 2009). Former section 401.004 provides,

(a)     In this title, "construction defect" means:

   (1)     the failure of the design, construction, or repair of a home, an alteration of or a repair, addition, or improvement to an existing home, or an appurtenance to a home to meet the applicable warranty and building and performance standards during the applicable warranty period; and

   (2)     any physical damage to the home, an appurtenance to the home, or real property on which the home or appurtenance is affixed that is proximately caused by that failure.

(b)     The term does not include a defect that arises or any damages that arise wholly or partly from:

   (1)     the negligence of a person other than the builder or an agent, employee, subcontractor, or supplier of the builder;

   (2)     failure of a person other than the builder or an agent, employee, subcontractor, or supplier of the builder to:

      (A)     take reasonable action to mitigate any damages that arise from a defect; or

      (B)     take reasonable action to maintain the home;

   (3)     normal wear, tear, or deterioration; or

   (4)     normal shrinkage due to drying or settlement of construction components within the tolerance of building and performance standards.

*Id.*

The charge's definition of construction defect followed the definition from subsection (a), but it did not list the defects and damages excluded under

subsection (b). D&M Marine objected to subsection (b) being left out of the definition, and the trial court overruled the objection.

For a jury charge, "[t]he court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277. "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855 (Tex. 2009) (citing *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000)). "[I]t is error to burden the jury with excess instructions which emphasize extraneous factors to be considered in reaching a verdict." *First Int'l Bank in San Antonio v. Roper Corp.*, 686 S.W.2d 602, 605 (Tex. 1985). Regardless of how correctly the instruction states the law, it is improper if it amounts to a comment on the weight of the evidence. *See Acord v. Gen. Motors Corp.*, 669 S.W.2d 111, 116 (Tex. 1984).

Subsection (b) of former section 401.004 covers a variety of specific instances that do not constitute a "construction defect" even if they would otherwise fit the definition. Act of June 2, 2003, 78th Leg., R.S., ch. 458, § 1.01, sec. 401.004, 2003 Tex. Gen. Laws 1703, 1704 (expired Aug. 31, 2009). But they are just that, *specific instances* that do not constitute a "construction defect." D&M Marine has not argued or made any showing that any of these instances—let alone all of the instances—was relevant to the suit or raised by the evidence

8

presented at trial. *See Columbia Rio Grande*, 284 S.W.3d at 855 (requiring instruction to find support in pleadings and evidence). Without such a showing, the language of subsection (b), while legally correct, would be an excess instruction, distract the jury from the relevant issues in the charge, and potentially constitute an improper comment on the weight on the evidence. *See First Int'l Bank*, 686 S.W.2d at 605; *Dresser Indus.*, 880 S.W.2d at 757; *Acord*, 669 S.W.2d at 116.

We overrule D&M Marine's fourth issue.

### Admission of Evidence

In its first issue, D&M Marine argues that the trial court abused its discretion by considering hearsay in determining the award of engineering and consulting fees. In its third issue, D&M Marine argues that the trial court abused its discretion by allowing the Turners' attorney to testify about the reasonableness of a settlement offer.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens–*

*Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 317 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

To obtain reversal of a judgment based upon the improper admission of evidence, Ryland must show that the trial court committed error and that the error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a). Error based on the admission of evidence is generally not reversible unless the appellant can demonstrate that the judgment turns on the particular evidence excluded or admitted. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001).

**B.     Engineering and Consulting Fees**

In its first issue, D&M Marine argues that the trial court abused its discretion by considering hearsay in determining the award of engineering and consulting fees. The Turners sought recovery under the Texas Residential Construction Liability Act. Under this act, a party may recover "reasonable and necessary engineering and consulting fees." TEX. PROP. CODE ANN. § 27.004(g)(3) (Vernon Supp. 2011). Under the Texas Civil Practice and Remedies Code, a party can submit by affidavit proof of a reasonable and necessary cost charged for a service. TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(b) (Vernon 2008). An affidavit filed in compliance with section 18.001 is an exception to the hearsay rule. *Hong v.*

10

*Bennett*, 209 S.W.3d 795, 801 (Tex. App.—Fort Worth 2006, no pet.). One of the requirements for the statute to apply is "[t]he party offering the affidavit in evidence or the party's attorney must serve a copy of the affidavit on each other party to the case at least 30 days before the day on which evidence is first presented *at the trial of the case*." CIV. PRAC. & REM. CODE § 18.001(d) (emphasis added).

Evidence was first presented in the trial at issue on December 6, 2011. The Turners had not filed any affidavits in compliance with section 18.001 before this date. On that date, however, the following exchange occurred during a hearing before the trial court:

> Mr. Minton [D&M Marine's attorney]:  . . . . We also need to put an agreement on the record.
>
> . . .
>
> Mr. Grisham [The Turner's attorney]:  Mr. Minton and I discussed this before the trial, and we agreed that the plaintiffs will submit any of the reasonable and necessary consulting and engineering fees under the [Residential Construction Liability Act] to the Court for determination post-trial.
>
> Mr. Minton:  Speed it up.
>
> . . .
>
> The Court:  I'll . . . approve the agreement.

After the trial, a hearing was set for March 16, 2012. On February 6, 2012—39 days before the hearing—the Turners submitted affidavits that they

11

assert are in compliance with section 18.001. D&M Marine argues that, while the affidavits were submitted more than 30 days before the hearing at which the issue of engineering and consulting fees were presented, they were not submitted more than "30 days before the day on which evidence is first presented at the trial of the case" as required under the statute. *Id.*

D&M Marine objected to the affidavits as hearsay at the hearing. Its attorney explained,

> When I agreed to let them prove up their charges to the Court, what I thought they were going to do is elicit the testimony, but then submit that to the Court, if necessary, after the jury verdict. I didn't think about them coming back in with affidavits after the fact.

The trial court overruled the hearsay objection and allowed the affidavits to be considered.

As the statute states, affidavits must be filed at least 30 days before the first date that evidence is presented at trial. *Id.* The Turners' affidavits on engineering and consulting fees were not submitted within 30 days of the first date that evidence was presented at trial.

Nevertheless, at trial, the parties and the court agreed to "submit any of the reasonable and necessary consulting and engineering fees under the [Residential Construction Liability Act] to the Court for determination post-trial." This constitutes a Rule 11 agreement. *See* TEX. R. CIV. P. 11 (allowing agreement between parties to be enforced if made in open court and entered of record). There

12

were no limitations placed on what could be submitted after the trial. To the contrary, they indicated that "any of the reasonable and necessary consulting and engineering fees" would be submitted post-trial.

At the hearing on the fees, D&M Marine's attorney stated that he thought they were agreeing to have all the evidence presented at trial and the trial court would consider the matter later. This interpretation is not supported by the evidence of the agreement. "Rule 11 agreements are contracts relating to litigation, subject, therefore, to general rules of contract construction." *Trudy's Texas Star, Inc. v. City of Austin*, 307 S.W.3d 894, 914 (Tex. App.—Austin 2010, no pet.). Our primary concern in construing a contract is to ascertain the intent of the parties as expressed in the instrument. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). We give the contract's terms their "plain and ordinary meaning" unless the contract indicates that the parties intended a different meaning. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009).

By the terms of the agreement, the parties agreed to submit "any of the reasonable and necessary consulting and engineering fees" post-trial. D&M Marine's attorney stated that the purpose of the agreement was to speed things up. Even if D&M Marine's attorney's statement at the post-trial hearing that his understanding was that the intent was to present all of the evidence at trial was

correct, this is in conflict with the parties' agreement and stated purpose. If all of the evidence was to be presented at trial with only a postponement of the ruling on the evidence, this would do nothing at all to "speed [the trial] up." It would only delay and lengthen the decision-making process. Under this interpretation, instead of seeking a ruling contemporaneously with the presentation of the evidence, the parties would have caused a months-long delay between when the evidence was presented and when it was considered. This would require the trial court to review the evidence a second time to remind itself of the relevant evidence. This does nothing to speed up the process.

In addition, there were no limitations placed on what would be submitted post-trial. The trial court reasonably could have construed the Rule 11 agreement as either agreeing to waive the requirements for section 18.001 altogether or to reset the date from which the 30-day deadline would be calculated. It is established that the Turners filed their affidavits more than 30 days before the hearing on the fees. Accordingly, under the parties' rule 11 agreement, the trial court did not abuse its discretion by overruling D&M Marine's hearsay objection.

We overrule D&M Marine's first issue.

## C.    Reasonableness of Settlement Offer

In its third issue, D&M Marine argues that the trial court abused its discretion by allowing the Turners' attorney to testify about the reasonableness of a

14

settlement offer. Under section 27.004 of the Texas Property Code, a contractor may make a written offer of settlement on a dispute concerning the construction. . PROP. CODE § 27.004(b). If the "claimant rejects a *reasonable* offer made under Subsection (b)," then certain limitations are placed on the claimant's ability to recover, including the amount of attorneys' fees. *Id.* § 27.004(e) (emphasis added).

In this case, D&M Marine made an offer of settlement, which the Turners rejected. One of the issues submitted to the jury was whether the settlement offer was reasonable. During Lemon's testimony concerning the attorneys' fees incurred on the Turners' behalf, the following exchange occurred:

Q. Did you review the offer made in 2007 in this case?

A. Yes.

Q. Did you believe that offer to be reasonable under the law?

Mr. Minton: Your Honor, again, I object. This goes outside the scope of what Mr. Lemon has designated himself as an expert to testify. He's here to testify about his attorney's fees in this case. That's it.

The Court: I'll overrule the objection. I'll let him testify.

[Mr. Lemon]: I did review the offer. And under the types of damages that are recoverable for a homeowner, I did not believe that the offer was reasonable.

D&M Marine argues that the trial court abused its discretion by overruling its objection.

15

Assuming without deciding that the trial court's ruling was erroneous, we hold that D&M Marine has failed to establish that the error is harmful. "Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted." *Interstate Northborough*, 66 S.W.3d at 220. As D&M Marine acknowledges in its brief, "One of the single most important issues in the trial—and a crucial part of D&M's defense—was whether D&M's written settlement offer to the Turners under the [Residential Construction Liability Act] was reasonable." Multiple people testified at trial about the nature of the damages suffered by the Turners, the terms of the settlement offer, and whether the offer would resolve the damages suffered by the Turners. Amid this testimony, the Turners' attorney offered a single, unsupported statement that he did not believe the settlement offer was reasonable.

The bulk of D&M Marine's argument to establish harm concerns showing how significant the issue of reasonableness was in the span of the trial. For example, D&M Marine provides block quotes on the matter from closing arguments. But this does not "demonstrate that the judgment turns on" Lemon's one statement. *Id.* Even the quoted sections make no mention of Lemon's testimony. We cannot hold that this one statement was harmful when the jury had

16

the testimony from multiple witnesses from which it could make its determination of reasonableness.

We overrule D&M Marine's third issue.

## Attorneys' Fees

In its second issue, D&M Marine argues the evidence is factually insufficient to support the jury's award of attorneys' fees.

## A. Standard of Review

In reviewing a challenge to the factual sufficiency of the evidence, we consider and weigh all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). We may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence would clearly support a different result. *Maritime Overseas Corp.*, 971 S.W.2d at 407. Accordingly, we defer to the factfinder's findings on contested evidence—the jury may believe one witness and disbelieve another, and it may resolve inconsistencies in any testimony. *Dyer v. Cotton*, 333 S.W.3d 703, 709 (Tex. App.—Houston [1st Dist.] 2010, no pet.)

(citing *Eberle v. Adams*, 73 S.W.3d 322, 327 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)).

**B.    Analysis**

To prove up attorneys' fees, the Turners presented one of their attorneys, Brent Lemon, to testify.  Lemon's testimony was based on the exhibit introduced into evidence showing the fees incurred, and his testimony largely tracked the information on the exhibit.  For the fees incurred up through the trial, the exhibit identified the fees as follows:

| | |
|---|---|
| Initial Meetings, Case Review | 32.5 |
| Pleadings | 48.3 |
| Depositions | 36.4 |
| Written Discovery | 54.4 |
| R/R of Documents produced by parties | 40 |
| Hearings | 18.5 |
| Inspections of Turner Home | 9.5 |
| Mediation | 18.6 |
| Miscellaneous | 18 |
| Trial | 296 |

Based on this exhibit, the amount of hours spent by the attorneys on the case up through trial was 572.2 hours.  These hours represented the work of two attorneys. Lemon testified that the $300 per hour was a reasonable fee for both of them. Accordingly, the Turners sought $171,660 in attorneys' fees up through trial.  The jury awarded them the full amount.

D&M Marine argues the evidence was factually insufficient under the recent Texas Supreme Court case, *El Apple I., Ltd. v. Olivas*, 370 S.W.3d 757 (Tex.

2012). In *Olivas*, the plaintiff prevailed on a claim of retaliation against her employer. *Id.* at 759. She then submitted an application for attorneys' fees under the lodestar method. *Id.* at 759–60. In affidavits, her attorneys testified to the number of hours they each worked on the case. *Id.* at 759. The trial court determined the reasonable rate to apply for each attorney and applied that rate to the full number of hours worked. *Id.* The issue on appeal was whether the evidence of the number of hours worked had to be supported by billing records or similar documentation as a predicate for the award. *Id.* at 760.

A party seeking attorneys' fees "bears the burden of documenting the hours expended on the litigation and the value of those hours." *Id.* at 761. In reviewing whether the party has met its burden, "a trial court should obtain sufficient information to make a meaningful evaluation of the application for attorneys' fees." *Id.* at 762. To this end, the Texas Supreme Court held that "proof should include the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked." *Id.* at 763.

In *Olivas*, the attorneys, rather than presenting time records or testifying "based on their recollection of such records[,] . . . . based their time estimates on generalities such as the amount of discovery in the case, the number of pleadings filed, the number of witnesses questioned, and the length of the trial." *Id.* The

19

supreme court held that this was insufficient. *Id.* "The [trial] court could not discern from the evidence how many hours each of the tasks required and whether that time was reasonable." *Id.*

The court held that, "if multiple attorneys or other legal professionals are involved in a case, the fee application should indicate which attorney performed a particular task or category of tasks." *Id.* The court concluded that the evidence necessary to support a lodestar calculation "includes, at a minimum, [1] documentation of the services performed, [2] who performed them and at what hourly rate, [3] when they were performed, and [4] how much time the work required." *Id.* at 764.

The Turners' exhibit and the testimony of Lemon that largely tracked the exhibit do not satisfy this minimum requirement set out in *Olivas*. The exhibit and testimony identify the services performed only as very general topics. The evidence does not identify who performed each of the tasks. And it does not identify when the services were performed. While the evidence does establish the amount of time worked, it does not do it with enough particularity to determine whether the amount of time involved was an appropriate amount. For example, the evidence establishes that the Turners' attorneys spent a total amount of 54.4 hours on "written discovery." But we do not know how much written discovery was involved. Accordingly, the fact finder could not discern whether this was an

appropriate amount of time on written discovery. Similarly, we know that 18.5 hours were spent on hearings, but the evidence lacks any particularity such as how many hearings there were, the nature of the hearings, the length of the hearings, or the amount of time spent in preparation for the hearings.

The Turners correctly explain that Lemon testified that his determination of hours worked was based on a review of the docket sheet and other documents in the file to determine the approximate amount of time worked. Assuming that this is a sufficient method of determining time worked under *Olivas*, Lemon did not testify about the details of that review. We know only that it was done. We hold the evidence in support of attorneys' fees is not sufficiently specific to support the jury's award of fees.

We sustain D&M Marine's factual sufficiency challenge on the Turner's award of attorneys' fees. Accordingly, we remand for a new trial on attorneys' fees.

## Conclusion

We reverse the trial court's award of attorneys' fees and remand for a new trial. We affirm the remainder of the trial court's judgment.


Laura Carter Higley
Justice

21

Panel consists of Justices Keyes, Higley, and Bland.