**Opinion issued August 29, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-11-00971-CV

———————————————

**TREIMEE CORP. D/B/A PARK ON WESTVIEW APTS AND PARK ON WESTVIEW APARTMENTS, LP, Appellants**

**V.**

**ARMANDO GARCIA, Appellee**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-47202**

---

## MEMORANDUM OPINION

In this premises liability case, appellants, TREIMee Corp. d/b/a Park on Westview Apts ("TREIMee") and Park on Westview Apartments, LP ("Park on Westview"), appeal from the trial court's judgment rendered on the jury verdict in

favor of appellee, Armando Garcia, for injuries sustained when he fell through a collapsed concrete platform on an outside stairway of an apartment building. In four issues, appellants contend that the trial court erred in rendering its judgment because (1) Garcia was not an invitee, (2) appellants did not have actual or constructive knowledge of the premises defect, (3) the premises were not a common area, and (4) Garcia's expert witness was not qualified to testify and his opinion was unreliable. In a separate issue, Park on Westview contends that it is not liable because it did not control the property at the time of Garcia's accident. For the reasons stated below, we affirm the trial court's judgment.

## Background

The Park on Westview Apartments is a complex of 212 units managed by TREIMee, a property management company.[1] At the time of the events giving rise to this action, Eva Marchan, a resident at the complex, lived in unit 168. Marchan's apartment, which was located on the second floor, was accessible by an outer stairway. The stairway's metal structure held a concrete platform midway up the flight of stairs. The platform, which was located directly above the enclosed private patio of unit 167, was supported at its corners by four metal posts and metal undergirding running between the posts. The resident of unit 167 stored tires underneath the concrete platform.

---

[1] Jack Yetiv, appellants' trial counsel and counsel on appeal, is the sole owner of Park on Westview and TREIMee.

2

On April 29, 2008, Garcia visited Marchan at her apartment.[2] As Garcia began descending the stairway to leave, the concrete platform cracked, and Garcia slipped through the broken concrete and landed in the patio below. Garcia sustained a hand laceration and back injury as a result of his fall.

At trial, appellants argued that Garcia's fall was caused by a hairline crack in the concrete landing which could not have been detected by an inspection. Garcia maintained that his accident was caused by the failure of the metal structure to hold the concrete platform. The testimony was undisputed that portions of the metal structure holding the concrete landing were rusted. Garcia testified that the upper flight of the stairway was barely attached to the platform, causing it to shake. Several photos depicting the metal structure and collapsed concrete platform were admitted at trial.

Marchan testified that, on two occasions prior to Garcia's accident, she had complained to Andrea Romero, the property manager, and to the assistant manager that she was concerned about the stairway because it was "very rusty and kind of wobbly." According to Marchan, "[Romero told] me they were actually working on the stairs in that apartment complex, that they just haven't gotten []to ours yet." Garcia testified that he noticed the stairway shaking when he visited Marchan for their son's birthday party on April 1, 2008, and that he and Marchan reported it to

---

[2]    Garcia and Marchan have two children together, Mia and Armando, Jr.

Romero. Romero, however, testified that Marchan never complained about the stairway to her.

Garcia presented Dr. Brian Le, a chiropractor, as an expert witness to testify regarding Garcia's treatment for his injuries. Dr. Le testified that Garcia suffered severe muscle spasms in his neck and back as a result of the fall, and that the chiropractic and therapeutic treatments he administered to Garcia were necessary. Garcia testified that he experienced pain in his lower back and neck, headaches, and numbness in his arm. Marchan testified that, immediately after the fall, she observed bruising on Garcia's hand, back, and bottom, and that Garcia frequently complained about back pain after the accident.

At the conclusion of trial, the jury found in favor of Garcia and awarded him damages in the amount of $5,000.00 for past physical pain and mental anguish, and $6,635.00 for past medical expenses. Upon appellants' motion for remittitur, the trial court reduced the award for past medical expenses to $5,885.00. The trial court entered a revised judgment reflecting a total damage award of $10,885.00. The trial court denied appellants' motion for judgment notwithstanding the verdict, and their motion for new trial was overruled by operation of law. Appellants timely filed this appeal.

**Discussion**

**A. Duty**

By separate issue, Park on Westview contends that the trial court erred in allowing it to be held liable because there was no evidence or, alternatively, insufficient evidence that Park on Westview had any control over the property and, thus, it owed no duty to Garcia. Garcia argues that Park on Westview owed him a duty as the property owner, and that there was ample evidence demonstrating that it exercised control over the property.

Premises liability is based on the law of negligence. *Zook v. Brookshire Grocery Co.*, 302 S.W.3d 452, 454 (Tex. App.—Dallas 2009, no pet.). In a premises liability case, the plaintiff must establish (1) a legal duty owed to the plaintiff, (2) breach of that duty, and (3) damages (4) proximately caused by the breach. *See Perez v. DNT Global Star, L.L.C.*, 339 S.W.3d 692, 700 (Tex. App.—Houston [1st Dist.] 2011, no pet.). As with any other negligence action, a defendant in a premises liability case is liable only to the extent it owes the plaintiff a legal duty. *See Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008).

Park on Westview contends that it was merely the titleholder of the property and exercised no control, and thus, it owed no duty to Garcia on the date of his accident. As a rule, to prevail on a premises liability claim, a plaintiff must prove

5

that the defendant possessed—that is, owned, occupied, *or* controlled—the premises. *See Wilson v. Tex. Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex. 1999) (emphasis added). Here, there is no dispute that Park on Westview owned the property. Further, evidence was presented at trial that Park on Westview controlled the premises. "Park on Westview, LP" appears at the bottom of the document entitled "Property Rules for Park at Westview Apts," which is incorporated in the lease form. The section of that document entitled "Statement Regarding Crime, Safety, and Security on Our Property" states as follows: "We have fenced the whole property and we pay approximately $6000 per month to staff the guardhouse on a 24/7 basis (with occasional exceptions) to attempt to *control* who comes into the property." (Emphasis added). The document also lists the circumstances under which Park on Westview reserves the right to enter the property. Further, all repair requests were to be directed to Yetiv, the sole owner of Park at Westview. Thus, there was sufficient evidence to conclude that Park on Westview owned and controlled the premises on the date of the incident. We overrule Park on Westview's separate issue.

## B. Garcia's Status

In their first joint issue, appellants contend that the trial court erred in finding that Garcia was an invitee at the time of his accident. Rather, they argue, Garcia was a licensee and, thus, not entitled to recover damages because the jury

6

charge and the judgment were predicated on Garcia's status as an invitee. Garcia asserts that he was an invitee as a matter of law.

Appellants first argue that Garcia was not an invitee because there was no evidence that Garcia was on the property for Park on Westview's benefit. In support of their argument, appellants discuss at length the traditional analysis in premises liability cases which focused on whether a person who came onto a landowner's property had present business relations with the owner of the premises making his presence of mutual benefit to both. *See, e.g.*, *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975); *Galveston Oil Co. v. Morton*, 7 S.W. 756, 758 (Tex. 1888); *Weaver v. KFC Mgmt.*, 750 S.W.2d 24, 26 (Tex. App.—Dallas, 1988, writ denied); *Prestwood v. Taylor*, 728 S.W.2d 455, 463 (Tex. App.—Austin 1987, writ ref'd n.r.e.). However, in *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978), the Texas Supreme Court held that the duty owed by a landlord to its tenant is the duty owed to an invitee, and this duty of the landlord extends to the tenant's invited guests. *See id.* at 513–15. Here, Marchan testified that she had invited Garcia to her apartment for lunch. Therefore, under *Parker*, Garcia was an invitee as a matter of law. *See Dickinson Arms-REO, L.P. v. Campbell*, 4 S.W.3d 333, 337 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (concluding that although tenant was not accompanying plaintiff at time of car-jacking,

7

uncontroverted evidence that plaintiff was present at apartments as result of being invited as guest by his girlfriend rendered plaintiff "invitee" as a matter of law).

Appellants next argue that, even if *Parker* applies, we should interpret the decision as the Fourteenth Court of Appeals did in *American Industries Life v. Ruvalcaba*, 64 S.W.3d 126 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). In *Ruvalcaba*, the parents of a child who was injured in a fall from an open staircase in the office building where his father worked sued the property owner for negligence. *See id.* at 131. The trial court found in favor of the plaintiffs and the owner appealed. *See id.* On appeal, the court noted that "[t]he general test for determining whether [the mother and child] were invitees of American Industries is whether, at the time [the child] was injured, they had present business relations with American Industries which would make their presence of mutual benefit to both them and to American Industries." *Id.* at 135. After concluding that the child could not be considered an invitee under the traditional rule, the court considered the plaintiffs' argument that the child should be given invitee status under *Parker* and Section 360 of the Restatement [Second] of Torts. *Id.* at 135–36. The court noted that Section 360 gives entrants onto property the equivalent of invitee status for premises liability purposes under certain circumstances, even though these entrants would not be considered invitees under the traditional analysis in premises liability cases. *See id.* at 136. However, the *Ruvalcaba* court also noted,

8

All of the cases cited by the Ruvalcabas in support of their §360 argument are cases involving either apartment buildings or stores that are open to the public. . . . There is no evidence that the Building is an apartment complex or that the Building is a store where goods are offered for sale to the public. There is also no evidence that the general public is invited into the Building. The Ruvalcabas have not cited, and we have not found, any cases that extend *Parker* to an office building where there is no evidence that the building is held open to the general public ("Private Office Building"). We find no basis for extending *Parker* to a Private Office Building like the Building.

*Id.*

According to appellants, the clause "open to the public" in the above-quoted text modifies apartment buildings and stores. They argue that the apartment complex here was not open to the public because the guardhouse restricted entry onto the premises and, thus, *Parker* and Section 360 do not apply. We disagree. The *Ruvalcaba* court stated that "[t]here is no evidence that the Building is an apartment complex *or that the building is a store where goods are offered for sale to the public*." *Id.* (emphasis added). It is clear that "open to the public" only modifies stores. Here, it is undisputed that the Park on Westview is an apartment complex, and the uncontroverted evidence showed that Marchan invited Garcia to the apartment as a guest. As such, Garcia was an invitee as a matter of law. *See Campbell*, 4 S.W.3d at 337. Appellants' first issue is overruled.

9

## C. Actual or Constructive Knowledge

In their second issue, appellants contend that even if Garcia was an invitee, there was no evidence or, alternatively, insufficient evidence that they had actual or constructive knowledge of the premises defect. Garcia argues that there was sufficient evidence to support the jury's finding that appellants knew or should have known of the defect.

An invitee must establish the following elements to prevail on his premises liability claim: (1) the premise owner or occupier had actual or constructive knowledge of a condition; (2) the condition posed an unreasonable risk of harm; (3) the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner or occupier's failure to use such care proximately caused the plaintiff's injury. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000); *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 644 (Tex. App.— Houston [1st Dist.] 2005, pet. denied). In conducting a no-evidence review, we consider the evidence in the light most favorable to Garcia, as the prevailing party, indulging every reasonable inference in his favor and disregarding all evidence and inferences to the contrary. *See Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex. 1998). If there is any evidence of probative force to support the jury's finding of actual or constructive knowledge, we must uphold

the jury's verdict.  *See ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

At trial, the jury saw several photos depicting the stairway and the collapsed concrete platform.  The photos showed decay of the metal support structure that held the concrete platform.  Marchan testified that she complained to management on two separate occasions that the stairs were rusted and wobbly.  Garcia testified that the stairway shook and that the upper flight of stairs was barely attached to the metal platform.  In their brief, appellants concede that "some parts of the staircase were rusted."

Appellants argue that we cannot consider Marchan's oral complaints because the property rules document required that all complaints be submitted in writing.  The language upon which appellants rely states as follows: "You understand and agree that your failure to send the above written notice by either CERTIFIED mail or email (with proof that you did so) will be taken as proof that you never made this request.  So, again, if your request is important, please PUT IT IN WRITING."  (Emphasis in original).  However, this language appears underneath the heading "Statement Regarding Safety and Security on Our Property," and clearly pertains to requests for repairs to security devices. Further, this language is a contractual provision of the lease (i.e., landlord agrees to make

11

repair upon tenant's submission of written request) and has no bearing on whether appellants had actual or constructive knowledge of a premises defect.

Appellants also argue that Garcia adduced no expert testimony showing that an inspection would have revealed the hairline crack in the platform that appellants allege caused Garcia's fall. However, Garcia's theory at trial was that the failure of the metal structure to hold the concrete platform caused his fall. The jury saw photos and heard testimony regarding the rusted and deteriorated condition of the metal structure. *See Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007) ("non-expert evidence alone is sufficient to support a finding of causation . . . where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence."). A no-evidence challenge must fail where there is more than a scintilla of evidence to support the finding. *See Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987). Considering the evidence in the light most favorable to Garcia, we conclude that there was more than a scintilla of evidence to support the jury's finding that appellants knew or should have known of the dangerous condition.[3] We overrule appellants' second issue.

---

[3] Appellants also contend that there was insufficient evidence that they had actual or constructive knowledge of the premises defect. To raise a complaint of factual insufficiency of the evidence to support a jury finding on appeal, a party is required to raise a point in its motion for new trial. *See* TEX. R. CIV. P. 324(b)(2). Having failed to raise a complaint of factual insufficiency of the evidence

**D. Common Area**

In their third issue, appellants contend that there is no, or insufficient, evidence that the stairway was a "common area" over which they had control. As such, they argue, they had no duty to inspect or maintain the area. Garcia asserts that the stairway was a common area over which appellants had control.

Generally, a lessor has no duty to tenants or their invitees for dangerous conditions on the leased premises. *See Johnson Cnty. Sheriff's Posse v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996). This rule originates from the notion that a lessor relinquishes possession or occupancy of the premises to the lessee. *See id.* One exception to this general rule is that a lessor may be liable for injuries resulting from a defect on a portion of the premises that remains under the lessor's control. *See id.* Liability under this exception is based on physical possession of common areas; the liability question "turns on who had possession of a part of the premises rather than a mere right of re-entry." *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 296 (Tex. 2004).

Here, there was evidence that Marchan could access her apartment only by using the stairway in question, and that the bottom portion of the stairway was inside the fully enclosed patio of unit 167. However, Romero testified that,

supporting the jury's finding that appellants had actual or constructive knowledge of the condition in their motion for new trial, appellants have waived this issue on appeal. *See id.*

13

following Garcia's accident, Marchan was able to use the stairway next to second-floor unit 166 until the broken stairway was repaired. Romero also testified that appellants' employees were responsible for inspecting the stairways, and that they cordoned the stairway off following Garcia's accident until it was repaired. Further, Marchan's lease states that "passageways may be used only for entry or exit." *See Khan*, 138 S.W.3d at 296 (noting that liability "turns on who had possession of a part of the premises rather than a mere right of re-entry").

Appellants argue that it was impossible to inspect the stairway because of the tires stored in the patio of unit 167 underneath the concrete platform. They contend that because the resident of unit 167 paid an extra $20 per month for the private use of his patio, it would have been inappropriate for Romero to move the tires. This argument is unavailing. The Property Rules specifically prohibit residents from leaving tires, among other items, on their patios. The Rules further state that "[t]he office res[erves] the right to remove and dispose of such item[s] from your patio . . . at any time, without additional notice."

We find the evidence sufficient to show that the stairway was a common area over which appellants retained control. We overrule appellants' third issue.

## E. Expert Testimony

In their fourth issue, appellants contend that the trial court erred when it overruled their pretrial motion to exclude Dr. Brian Le's testimony and their

subsequent trial objections to his testimony. Specifically, they argue that Dr. Le was not qualified to testify as an expert regarding the necessity of Garcia's treatment, and his opinion was not reliable. Thus, they contend, there was no evidence to support the jury's award of damages for past medical expenses.

A claim for medical expenses must be supported by evidence that such expenses were reasonably necessary for the plaintiff to incur as a result of the plaintiff's injury. *Whitaker v. Rose*, 218 S.W.3d 216, 223 (Tex. App.—Houston [14th Dist.] 2007, no pet.). A plaintiff can prove reasonableness and necessity of past medical expenses through (1) expert testimony on the issues of reasonableness and necessity or (2) an affidavit prepared and filed in compliance with section 18.001 of the Texas Civil Practice and Remedies Code. *See Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 840 (Tex. 1997).[4] At trial, Dr. Le testified as an expert witness on the issue of the reasonableness and necessity of Garcia's treatment.

---

[4] Under Texas Civil Practice and Remedies Code section 18.001(b), a party can submit by affidavit proof of a reasonable and necessary cost charged for a service. TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(b) (West 2008); *D&M Marine, Inc. v. Turner*, __ S.W.3d __, 2013 WL 3483778, at *4 (Tex. App.—Houston [1st Dist.] July 11, 2013, no pet. h.). However, if the opposing party files a controverting affidavit, as appellants did here, it can force the offering party to prove reasonableness and necessity by expert testimony at trial. *Hong v. Bennett*, 209 S.W.3d 795, 801 (Tex. App.—Fort Worth 2006, no pet.).

*1. Admissibility of Expert Testimony*

Under Texas Rule of Evidence 702, an expert must be qualified and his testimony must be relevant and based on a reliable foundation. *See* TEX. R. EVID. 702; *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006). To prove that the expert is qualified, the offering party must show that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on the particular subject. *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996). The determination of whether a witness is qualified to testify as an expert is a matter of judicial discretion, and this decision will not be disturbed unless a clear abuse of discretion is shown. *See United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30–31 (Tex. 1997).

To determine whether expert testimony is reliable, a trial court must evaluate "the methods, analysis, and principles relied upon in reaching the opinion . . . [to] ensure that the opinion comports with applicable professional standards outside the courtroom." *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 725–26 (Tex. 1998). The court's ultimate task is not to determine whether the expert's conclusion are correct, but rather whether the analysis the expert used to reach those conclusions is reliable and therefore admissible. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 239 (Tex. 2010).

## 2. *Dr. Le's Qualifications*

Appellants argue that Dr. Le was not qualified to testify as an expert witness regarding the necessity of Garcia's treatment. The record reflects that Dr. Le graduated from Texas Chiropractic College in 1997. His education consisted of a three-and-a-half year program with rigorous courses on the musculoskeletal systems, as well as courses in neurology and radiology. Since Dr. Le began his practice as a chiropractor in 2000, he has treated thousands of patients, approximately one-half of whom come to him having sustained physical injuries. We conclude that Dr. Le is qualified based on his knowledge, experience, education, and training to testify regarding Garcia's injury and the reasonableness and necessity of his treatment. *See Broders*, 924 S.W.2d at 153.

## 3. *Reliability of Dr. Le's Testimony*

Appellants also contend that Dr. Le's testimony was not reliable because it was based only on Dr. Le's opinion without any basis to support it.

Dr. Le testified that, upon seeing a new patient, he records the patient's vital history and performs a physical examination. During the exam, which includes orthopedic and neurological testing, Dr. Le evaluates the patient for muscle spasms and any restrictions in the patient's range of motions. Dr. Le testified that the first two orthopedic tests—the Jackson cervical compression and the maximal cervical compression—evaluate cervical pain, and the last three tests—the Kemp test,

Gaenslen's test, and Valsalva maneuvers—evaluate lower back pain. According to Dr. Le, a cervical test that produces severe pain may indicate a disk herniation. Dr. Le also palpates the patient's paraspinous muscles to detect any trigger points, tenderness, or muscle spasms. Based on the results of the examination, Dr. Le formulates a treatment plan for the patient.

Dr. Le examined Garcia the day after the accident. Dr. Le testified that his palpations of Garcia revealed severe muscle spasms in the suboccipital muscles, which typically cause frequent headaches, as well as in his neck, and upper and lower back regions as a result of the accident. Dr. Le also testified that the range of motion testing indicated that Garcia was experiencing significant restrictions, and that the orthopedic test results showed that Garcia was experiencing severe pain in the cervical and lower back regions. Based on this information, Dr. Le formulated a treatment plan for Garcia that included electromuscle stimulation and ultrasound to reduce the muscle spasms, trigger point therapy on the cervical and lumbar regions to reduce swelling and inflammation, and moist ice and heat packs to increase circulation. Dr. Le noted in his report that if Garcia remained symptomatic with little improvement after several weeks of treatment, he would recommend an orthopedic consultation and/or an MRI to rule out possible disk herniation. Dr. Le also referred Garcia to Dr. Omar Vidal, a pain specialist, for consultation. In his evaluation report, Dr. Vidal stated that he believed Garcia had

18

sustained cervical and lumbosacral sprains/strains and also recommended an MRI to rule out internal derangements in those areas.

Due to continuing pain in his cervical and lumbar regions, Garcia underwent an MRI in August 2008. Dr. Le, who was trained to interpret MRI reports and had read thousands of MRI reports as a chiropractor, testified that Garcia's MRI report revealed multiple cervical and lumbar disk herniations. Because Garcia planned to move to Corpus Christi within several weeks, Dr. Le referred Garcia to Dr. James Tanner, a chiropractor in Corpus Christi, for continuing treatment.

At trial, Dr. Le explained in detail his charges for and the purpose of Garcia's treatments. Dr. Le testified that he was familiar with the costs of chiropractic care in the Houston area based on his many years of practice, and that the expenses incurred for Garcia's treatment were reasonable. Dr. Le further testified that the treatments he provided to Garcia were necessary because they alleviated Garcia's pain and facilitated his healing process.

The exam process outlined by Dr. Le demonstrated an appropriate methodology that incorporated standard chiropractic techniques. *See Old Republic Ins. Co. v. Weeks*, No. 13-07-00541-CV, 2009 WL 1740820, at *5 (Tex. App.— Corpus Christi 2009, pet. denied) (mem. op.) (concluding chiropractor's physical exam which included orthopedic, neurological, and range of motion testing exhibited deliberative methodology incorporating standard chiropractic

19

techniques). Contrary to appellants' contention that there is no basis to support Dr. Le's opinion that Garcia's treatment was necessary, Dr. Le testified that he treats patients based on his training and education. Further, Dr. Vidal's and Dr. Tanner's patient evaluation reports, both of which were admitted at trial, also support Dr. Le's opinion regarding the necessity of Garcia's treatment. Following his examination of Garcia, Dr. Vidal stated in his report that Garcia needed to continue active therapy with Dr. Le and have an MRI to rule out internal derangements in the cervical and lumbar regions. In his report, Dr. Tanner concluded that "a treatment plan will be therapeutically necessary in order to appropriately treat the injuries that have occurred." The therapeutic plan prescribed by Dr. Tanner includes the same treatments prescribed by Dr. Le.

We conclude that Dr. Le's testimony regarding the reasonableness and necessity of Garcia's treatment was based on a reliable foundation. Because Dr. Le was qualified to testify as an expert witness on this issue, and his testimony was reliable, the trial court did not abuse its discretion in admitting Dr. Le's testimony. As such, there was sufficient evidence to support the jury's damage award to Garcia for past medical expenses. Appellants' fourth issue is overruled.

### Conclusion

We affirm the trial court's judgment.

20

Jim Sharp<br>
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.